BARKOW *v.* DONOVAN WIRE & IRON CO.

1. MASTER AND SERVANT — DANGEROUS PLATFORM — NEGLIGENCE — SAFE PLACE—PROMISE TO REMEDY DEFECT—ASSUMPTION OF RISK.

In an action for negligent injuries to the person of a structural steel worker, who was injured by the fall of a heavy "gin pole," the evidence tended to show that he complained to his superior that the platform provided for him to work on was dangerous, because it was too narrow, and that this servant promised to supply additional planks. Defendant's testimony disputed the claim of plaintiff, and it was contended that the condition or width of the platform did not constitute the proximate cause of the injury. The platform sustained the gin pole, which was nearly 50 feet long and weighed about 500 pounds. *Held*, that the issues raised were questions for the jury and were properly left to them by the general charge.

2. SAME—TRIAL—CHARGE—BURDEN OF PROOF.

The trial court did not err in charging the jury that they should base their verdict upon the testimony they believed to be true even though it was opposed by a greater volume of testimony which they did not consider of equal credibility: that the plaintiff did not have to have the greater number of witnesses or the greater amount of testimony, etc.

3. SAME—PROXIMATE CAUSE.

*Held*, also, that the instructions sufficiently presented to the jury the claim of defendant that the proximate cause of the giving way of the pole was the ice and snow on the planks, and not merely the defective or insufficient platform.

Error to Wayne; Hally, J. Submitted January 4, 1916. (Docket No. 18.) Decided March 30, 1916.

Case by Herman Barkow against the Donovan Wire & Iron Company, a corporation, for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Charles E. Duffy* (*Stevens T. Mason,* of counsel), for appellant.

*Antonio Entenza,* for appellee.

Moore, J. The defendant is engaged in the erection of structural steel, and had the contract for the steel work on an addition to a building owned by the West Side Brewing Company of Detroit, and employed the plaintiff on this job. On the 13th day of November, 1911, the plaintiff was injured by the fall of a gin pole which came in contact with him and threw him into the basement.

Mr. Carruthers was the supervising superintendent. When plaintiff began work the basement story had been put in. Plaintiff was working on the first floor above the basement, and was engaged in erecting the iron and steel framework of the building. In the performance of this work he used a "gin" pole which rested on a temporary platform of planks. He claimed that this platform was too narrow, and made his work dangerous. He further claimed to have called the defendant's attention to this and he was promised additional planks in order to widen the platform. His claim will further appear in his testimony which we shall quote. Besides disputing plaintiff on the alleged promise, and on the absence of sufficient planks, the defendants insist that plaintiff failed to show that the narrow platform was the proximate cause of the injuries received.

The case was submitted to the jury, which returned a verdict in favor of the plaintiff. A motion was made for a new trial, which motion was overruled. The case is brought here by writ of error.

One of the assignments of error relates to the testimony of a witness as to what was disclosed by an X-ray photograph. The record shows the witness was competent to testify in that regard.

Another assignment of error relates to the cross-examination of the supervising superintendent. An examination of the record does not show that the discretion on cross-examination allowed a trial court was abused.

Another assignment of error relates to the argument. The record shows that, so far as the argument was improper, it was at once dealt with by the judge in such a way as not to be harmful as is manifest by the amount of the verdict.

The important assignments of error are: *First*, was there a case to submit to the jury? and, *second*, did the charge of the court properly submit the case to the jury?

*First.* It is said that the plaintiff assumed the hazards of the employment, and that he was guilty of contributory negligence, and for these reasons a verdict should have been directed. These contentions overlook an important feature of the claim of the plaintiff, which is that plaintiff called the attention of the supervising superintendent to the fact that there was not an adequate supply of planks to make a platform upon which to rest the lower end of the gin pole, that the situation was unsafe, and that the superintendent promised a supply of planks at once. The gin pole was 40 or 50 feet long, and would weigh 500 or 600 pounds.

We quote some of the testimony of the plaintiff:

"There were four guys on the pole, one run north, south, east, and west. The base of the pole set in the center beam of the plank. I had a conversation with Mr. Carruthers the time I first erected the pole. I told him I would have to have plank to set this pole

on to move the pole on, to work on; could not set the pole up on that beam alone so that the men would work around the pole—move it enough to set the pole on. Mr. Carruthers told me that he did not have any plank handy just then; to try and use the brick mason's plank; so I started to get a few of them, and the mason contractor told me to leave those planks alone, that he did not want his planks broken up; so, of course, I left them go, and did something else until I saw Carruthers again. I took three planks from the mason contractor and put the pole on.  *  *  *  I told Mr. Carruthers my conversation with the mason contractor in regard to these planks. He said, 'Go ahead and do the best you can with what you have got there, and I will see that you get some plank as soon as I can get them over.' He said, 'I think we have some plank on another job'—the plank that he used at the brewery. He said he would send them over right away. I believe I put up ten of these crossbeams from the north end before I was hurt. I put them all up. I was taking the pole down when I was hurt. I was through with it. It was necessary to have planking on this job so as to work, use the pole; you could not very well walk in the air. I would lay that planking on the crossbeams and make a platform around the pole. My last conversation with Mr. Carruthers in regard to obtaining planks was the Saturday before I was hurt. I was hurt on Monday morning, and I spoke to him about it on Saturday afternoon. He said, 'Go ahead and do the best you can.' He said, 'Do not stop work; do not hold up the job; do tne best you can, and I will have the plank here sure Monday morning the first thing.' I told him that the men did not want to work unless they had some plank there to protect them. I told him it was dangerous to work around there without any plank to walk around on. I was afraid that some of us were going to be hurt. I told him that on Saturday afternoon. One other man I know of told him about it, and another fellow told me that he would not work unless we had some plank on Saturday afternoon. He told me to come.to work Monday morning and he would get the plank there. I started to work on Monday morning."

He then described how the accident happened, and

claimed it would not have occurred if he had been supplied with the promised planking. His testimony was supported by the testimony of other witnesses. Mr. Carruthers denied having any such conversation.

In *Asplund* v. *Mining Co.,* 177 Mich. 529, beginning at page 545 (143 N. W. 633), there is a collection of many authorities upon the effect of an employer's promise to remedy a defect or to supply lacking material. The case before us is within those authorities.

*Second.* Was the case improperly submitted? Counsel for the defendant submitted many written requests to charge, nearly all of which were given. The charge was a very long one. Complaint is made of that part of it relating to proximate cause because it is said it ignored the possible effect of the ice and snow on the platform, and practically directed the jury to look for no other cause but the alleged failure to furnish the planking. We do not so interpret the charge. The jury had its attention called to the claim that the snow and ice contributed to the injury, and was told that, if because of them men who do work of this kind—ordinarily prudent men—would say it was not proper to go on with the work, then there could be no recovery. The judge also said:

"I charge you, that if you find that there were planks in or about the building in any place which was accessible to the plaintiff, and that he chose to proceed without getting them out from under the snow, your verdict must be for the defendant.

"I charge you that, if this plaintiff knew, and you so find from the evidence that he did know, that the platform upon which he was working was dangerous because of the snow and ice, and that there was sand at hand which he could have secured from the mason contractor, which would have made it safer, he contributed to his injury, and therefore your verdict must be for the defendant. * * *

"I further charge you that, if you cannot agree as to the proximate cause of the injury alleged in this

cause, it is not your privilege to speculate and guess as to that proximate cause, and, as I say, if you cannot agree as to the proximate cause, your verdict must be for the defendant.

"What proximate cause is is the thing that from the evidence that has been produced to you brought about the injury. Of course, if the plaintiff has not made clear to you what the thing was that brought about the injury, he has not proven his case by a fair preponderance of the evidence and he cannot recover.

"Now, gentlemen, very little remains to be said to you. In this kind of cases the burden of proof rests upon the plaintiff; that is, the plaintiff must satisfy you by a fair preponderance of the evidence of all of the material and essential conditions of his case."

We think that feature of the case was properly left to the jury.

In the charge the following was stated:

"Gentlemen of the jury, there is only one other thing: What is meant by preponderance of the evidence? I think you have been told heretofore what was meant by preponderance of the evidence. That does not mean that the people upon whom the burden rests of proving their case must have in here a greater number of witnesses. Nor does it mean that they have to produce a greater amount of testimony. But it does mean that they have to produce testimony that brings to you a conviction of truth. A witness takes the stand. He has been sworn and he testifies. You listen to him, and you say to yourself, 'That man is telling the truth.' Now, that testimony preponderates over all other testimony that is offered upon that subject, even if a dozen were to testify differently from that one, because it has brought a conviction of truth, and that is what you are here for. You are here to find the truth. You are not here to sympathize. You are not here to pay any debts. You are not here to allow bias, or prejudice, or passion to influence you. You are here to find the truth, and as you find that truth let that truth find its way into your verdict."

Counsel say this was error, citing *Dupuis* v. *Traction Co.*, 146 Mich. 151, at page 159 (109 N. W. 413).

A reference to the case will show it does not support the contention of counsel. The judge in this case said, in effect, to the jury, they should base their verdict upon the testimony they believed to be true, even though it is opposed by a greater volume of testimony which they do not believe to be true.

Judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.