188 So.2d 368 (1966)
NATIONWIDE MUTUAL INSURANCE COMPANY and Nationwide General Insurance Company, Appellants,
v.
Broward WILLIAMS, State Treasurer and Insurance Commissioner, Appellee.
No. G-419.
District Court of Appeal of Florida. First District.
July 7, 1966.
*369 Keen, O'Kelley & Spitz, Tallahassee, for appellants.
Earl Faircloth, Atty. Gen., Robert J. Kelley, Asst. Atty. Gen., and Walter E. Rountree, Gen. Counsel, for appellee.
RAWLS, Chief Judge.
Nationwide Mutual Insurance Company and Nationwide General Insurance Company appeal from an order of the Insurance Commissioner denying an increase in automobile insurance rates requested by the two companies. We will refer to Appellants as "Nationwide" or "Company."
Judicial review of insurance rate "filings" is a recent innovation in this jurisdiction.[1] As used in the insurance code, a "filing" is in the nature of a petition with supporting documentary data by an insurance company (or a rating organization) seeking approval by the Insurance Commissioner of proposed rates to be charged by the Company to its policyholders. Such approval is required by the mandate of the controlling statutes; therefore, insurance rates charged by insurance companies are subject to regulation by the State of Florida. Administratively, such regulation falls upon the shoulders of the Insurance Commissioner, and his decision necessarily carries with it a presumption of correctness.
The Insurance Commissioner's authority in reviewing a filing is limited. He, unlike other rate-making authorities, cannot accept in part and reject in part. He must either approve or disapprove that which the insurance company elects to submit. True enough, the Commissioner may require additional information from the Company as to the filing, but such procedure does not allow him to utilize his individual judgment for the purpose of modifying the demands of the Company. He must either approve in toto or reject in toto. Therefore, the fundamental burden on the Company's part is to prove by a preponderance of the evidence that each item of its filing will produce rates which are not "* * * excessive, inadequate, or unfairly discriminatory." And if the Company did not adduce proof of such element to the extent that it will meet the judicial test of substantial evidence, then its appeal to this court must fail. We observe a legislative deficiency upon the subject of regulating insurance rates by not allowing some flexibility on the part of the Insurance Commissioner in reviewing filings. However, we must review the instant cause within the confines of the existing statutory provisions and thereby keep in mind the ultimate question of whether the Company's filing meets the statutory test previously mentioned.
In determining at any time whether to approve or disapprove a filing, the Commissioner is required by statute to give consideration only to the applicable standards delineated in the statutory provisions[2] *370 which inter alia are: "(a) Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits. * * * (d) Rates shall not be excessive, inadequate or unfairly discriminatory."
Subsequent to the filing, the Commissioner held a public hearing at which time Nationwide produced two expert witnesses. These witnesses while testifying utilized extensive documentary data included in the filing. A few days after the public hearing, the Commissioner entered the order appealed by which he disapproved the filing for the following reasons:
1. The proposed increase in rates is inequitable on the grounds of insufficient credible experience to justify the application of the uniform percentage increase in rates requested to the territories in this state.
2. The requested rate increase is excessive on the grounds that insufficient evidence has been presented to show that the rising loss trends are the primary cause of the reversal of the Company's favorable financial experience on its auto business countrywide in 1962 and 1963. It is evidenced that in the face of these rising loss trends the Company's premium structure and management underwriting policies had produced an increasing profit in the years just prior to 1962.
Nationwide in challenging the validity of the Commissioner's order poses the following two points, which we will treat together, viz.:
1. If a company's credible experience shows that any increase in rates less than that proposed would be inadequate and this experience is consistent with industry experience, and there is no evidence of a change in the company's underwriting policies which would tend to make its rates inadequate, how much evidence, if any, need the company introduce to show that the inadequacy of its rates is due primarily to "rising loss trends"?
2. If a company's rates in Florida are inadequate, will a lack of credible evidence in some territories in the state prevent its charging adequate rates in the territorial relativities currently used by it and by other companies and approved by the commissioner?
Nationwide began doing business in this state in 1958. On May 1, 1963, it procured an increase of 5% of the premiums charged and on May 1, 1964, it again procured an increase of 10.8% of premiums charged. By the instant filing, it seeks an increase in the following percentages of the rates charged for the basic automobile liability providing maximums of $10,000.00-$20,000.00:

 Mutual Co. General Co.
 Bodily injury & property
 damages 25.0% 26.3%
 Collision 15.4% 16.0%
 Medical payments 24.6% 12.0%

In addition, the membership fee for all new business of the Mutual Company would be eliminated and a Resident Student Rule would be adopted to decrease premiums where an unmarried driver was a student in school 100 miles or more from the principal garage of the vehicle.
Witnesses for Nationwide who were seeking to prove that the present rates charged its policyholders were inadequate and that any increase less than that requested would be inadequate, were Nationwide's actuary, Vice-President Robert W. Griffith and Joseph Linder, an independent actuary. Griffith testified that Nationwide's countrywide formula for allocation of the premium dollar is 60% for payment of losses and allocated claim adjustment expense, and 36% for other operating expenses with the remaining *371 4% being set aside for underwriting gain and contingencies. Linder testified that the foregoing allocation was reasonable. It is significant that no testimony was adduced as to the efficiency or inefficiency in the management of the Company's affairs, such as sums expended for executive's salaries, entertainment, etc. This bare record merely shows that in the opinion of the witness Linder a 40% "overhead" is reasonable.
Of interest is testimony adduced by Nationwide pertaining to an "adequate" rate. Its vice-president touched upon "loss adjustment expense" which constituted a reserve for claims not settled during the accounting period. The testimony is sparse as to the final disposition of such reserves, the treatment of income earned upon same and the allocation of sums not actually expended in the final settlement of claims. Other material testimony adduced was that Nationwide, for the preceding five year period, earned an underwriting gain on all auto coverages countrywide of 1.7% but that its Florida experience for the two year period of July, 1962 through 1964 reflected the loss ratios set out above. He further testified that the Company is not fully recognizing its loss experience in Florida as yet because of limited volume, but he felt that the data submitted is fully credible on a statewide basis for the making of rates although the Company did not want to go beyond 25% of any one type of coverage since such action would be "impractical * * * disruptive of policyholders relations and could cause substantial reductions in business and * * * would put us out of line completely competitive. * * *" For instance, according to this witness, the indicated increase was 31% but the Company is only asking an increase of 15.4%. As to the medical payments increase, he testified that the indicated increase is 62.3% but the Company was only asking 24.6%. The net effect of this witness's testimony is that the rate increase requested is completely inadequate, but that management had decided as a practical matter to disregard the statistical data and "pay attention to what other carriers are charging for automobile insurance."
As stated above, the proposed rate increase affected only the basic limits of $10,000.00-$20,000.00 liability coverage. When asked whether or not any study had been made on excess limits, the vice-president stated: "Generally speaking, the experience on excess limits has been more satisfactory than that on basic limits. That's one of the reasons, incidentally, why we prefer to make rates on total limits because then any inadequacy or excessiveness of excess limits rates is automatically reflected back into the base limits picture." He was then asked whether the Company had studied the effect of excess limits on rates, and responded, "I can't do it on the same basis that I have the Florida exhibits here, but we do each year prepare a study countrywide and by state of the basic limits loss experience and the excess limits loss experience and then compare one with the other."
With reference to the statement that the Company has sufficient experience statewide, we are unable to find in this record the number of passenger automobiles insured by Nationwide in the State of Florida during the period of time with which we are concerned. Nor do we find any testimony as to the minimum number of such automobiles that will afford "credibility." In short, although not questioned by the Commissioner, we are unable to glean from this inadequate record proof of "statewide credibility" as to Nationwide's experience in Florida.
In reviewing the question of credible experience as to territories, we find that this record does not reflect how the Company arrived at its initial territorial classifications in 1958 when it began underwriting in the State of Florida. The representation *372 is made in this record that such territorial classifications are substantially those used by other companies. In examining its experience as to particular territories, the Company states that in the Dade County area, where the Company's experience is relatively small, its loss ratio fluctuated widely during the two year period 1962-1963. For example, in 1962 a loss ratio of 204.9% was sustained while in 1963 it was 37.8%, giving the Company a combined loss ratio of 84.9%. In the Palm Beach area, the Company sustained a loss ratio of 56.5% and in the Jacksonville area, a loss ratio of 82.8%. In this filing the amount of the Company's requested rate changes do not vary by territories, but it asks for a flat percentage increase statewide. No effort is shown on the Company's part to utilize the experience other carriers have sustained in the classified territories during this period.
Section 627.091, Florida Statutes, F.S.A., specifically provides that the "experience of other insurers or rating organizations" may be utilized in a filing. Rather than pursue this route, the Company decided to impose its proposed increase on a statewide basis. One of the grounds for the Commissioner's rejection of the filing was that the increase is inequitable in that the Company applied a uniform percentage of increase in rates throughout the state. It is not controverted that Nationwide is entitled to some adjustment in its rates, and thus, we reach the critical question of whether the Commissioner in rejecting the proposed rates disregarded the proponderance of evidence in support of same. In this regard, we conclude that the Commissioner's finding must be sustained since the burden was upon the Company to adduce substantial evidence to support the increase that it sought as to the particular territories, rather than to arbitrarily assign such increase to the state as a whole based upon past experience.
This court is not and should not be burdened with the responsibility of rate-making. Insurance rate-making is a technical, complicated, and involved procedure. It is not an exact science. Judgment based upon a thorough knowledge of the problem must be applied. Courts cannot abdicate their duty to examine the alleged errors in the light of the evidence, to interpret and apply the law, and to give just credence to the judgment of the Insurance Commissioner who specializes in the field of insurance, when his adjudication is supported by the testimony of experts.[3] Here Nationwide implores this court to direct the Commissioner to accept its filing on the theory that his action will prevent it from charging adequate rates. In proving this contention, it presents uncontroverted evidence based upon its Florida experience of losses that the proposed filing is inadequate. In the same breath it says that its countrywide experience over a five year period reflects a gain of 1.7%. Nationwide then tells us that it allocates its operating expenses "countrywide" but allocates its losses statewide. However, its excess losses, which it does not delineate with any particularity are allocated countrywide. The Company speaks generally of the experience of other casualty insurers, but declines to utilize such experience with respect to present territorial classifications. It is upon this type of record that the Company now insists that we reverse the determination of the Insurance Commissioner. We decline to do so.
Affirmed.
WIGGINTON and JOHNSON, JJ., concur.
NOTES
[1] Section 627.391, Florida Statutes, F.S.A.:

"(1) All final rulings, orders or decisions of the commissioner under part I of this chapter (§§ 627.031 through 627.391) shall be subject to review by appeal to the district court of appeal, first district. * * * (4) The district court of appeal shall affirm, reverse or modify the commissioner's ruling, order or decision appealed from. (5) If the district court of appeal finds that the commissioner's ruling, order or decision is not supported by the preponderance of the evidence or is not in accordance with law, the court shall reverse or modify the commissioner's ruling, order or decision."
[2] Section 627.081, Florida Statutes, F.S.A.
[3] Insurance Department v. City of Philadelphia, 196 Pa.Super. 221, 173 A.2d 811 (1961).