**ALLSTATE INSURANCE COMPANY and Allstate Indemnity Company, Plaintiffs and Appellees,**

v.

**Byron KNUTSON, as North Dakota Insurance Commissioner, Defendant and Appellant.**

In the Matter of the FILINGS OF REVISED RULES AND RATES FOR PRIVATE PASSENGER AND UTILITY AUTOMOBILES BY ALLSTATE INSURANCE COMPANY and the filing of Revised Rules and Rates for Private Passenger Cars by Allstate Indemnity Company.

**Civ. No. 9564.**

Supreme Court of North Dakota.

April 16, 1979.

---

5. The trial court found that the letter of denial was issued July 24, 1972. The letter actually was dated July 20, 1972.

Thomas O. Smith, Bismarck, for plaintiffs and appellees.

1. *Farmers Co-op Assn. of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976); *Gebeke v. Arthur Mercantile Co.*, 138 N.W.2d 796 (N.D. 1965); *Shrock v. Roy*, 111 N.W.2d 703 (N.D. 1961).

2. "26 28 03. *Making of rates.*—1. All rates shall be made in accordance with the following provisions:

Alan J. Sheppard, Special Asst. Atty. Gen., Insurance Commission, Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

■ In this case, the Insurance Commissioner for the State of North Dakota appeals to this court from an order for judgment of the District Court of the Fourth Judicial District, entered on the 29th day of September, 1978. Although we have often said that an order for judgment is not appealable,[1] we shall in this case, because it appears that both parties are anxious to have this court reach the merits, and because a denial of the appeal on that ground would in this case only result in a temporary remand for the purpose of permitting the Commissioner to appeal from the judgment, consider this as an appeal from the judgment of the district court which was entered on the 4th day of October, 1978.

The judgment reversed the decision of the Insurance Commissioner dated May 18, 1978, which denied the filing for a rate increase of Allstate Insurance Company and Allstate Indemnity Company, whom we shall hereinafter refer to as Allstate. The judgment remanded the case to the Insurance Commissioner for the purpose of allowing him to enter an order approving the rate filings, and further provided that if the Commissioner did not enter an order approving the rate filings within 10 days of the date the record was returned to the Commissioner, the rate filings were to be deemed approved. We affirm the judgment of the district court.

Chapter 26–28, N.D.C.C., relating to casualty insurance rates is generally applicable to this case. Sections 26–28–03, 26–28–04(1), and 26–28 -05(1), N.D.C.C., and particularly subsection (3) thereof, are especially pertinent.[2] Section 26–28–18(3), N.D.C.C., makes any order or decision of the Insur-

a. Due consideration shall be given to past and prospective loss experience within and outside this state, to catastrophe hazards, if any, to a reasonable margin for underwriting profit and contingencies, to dividends, savings, or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members or subscribers, to past and prospective expenses both coun-

ance Commissioner subject to review by appeal within the time and in the manner provided by Chapter 28–32, N.D.C.C., the

> trywide and those specially applicable to this state, and to all other relevant factors within and outside this state.
> b. The systems of expense provisions included in the rates for use by any insurer or group of insurers may differ from those of other insurers or group of insurers to reflect the requirements of the operating methods of any such insurer or group with respect to any kind of insurance, or with respect to any subdivision or combination thereof for which subdivision or combination separate expense provisions are applicable.
> c. Risks may be grouped by classifications for the establishment of rates and minimum premiums. Classification rates may be modified to produce rates for individual risks in accordance with rating plans which establish standards for measuring variations in hazards or expense provisions, or both. Such standards may measure any differences among risks that can be demonstrated to have a probable effect upon losses or expense.
> d. Rates shall not be excessive inadequate or unfairly discriminatory.
> "2. Except to the extent necessary to meet the provisions of subdivision d of subsection 1, uniformity among insurers in any matters within the scope of this section is neither required nor prohibited." § 26–28–03, N.D.C.C.
> "26–28–04. *Rate filings.*—1. Every insurer shall file with the commissioner every manual of classifications, rules and rates, every rating plan and every modification of any of the foregoing which it proposes to use. Every such filing shall state the proposed effective date thereof and shall indicate the character and extent of the coverage contemplated. When a filing is not accompanied by the information upon which the insurer supports such filing, and the commissioner does not have sufficient information to determine whether such filing meets the requirements of the chapter, he shall require such insurer to furnish the information upon which it supports such filing and in such event the waiting period shall commence as of the date such information is furnished. The information furnished in support of a filing may include:
> a. The experience or judgment of the insurer or rating organization making the filing.
> b. Its interpretation of any statistical data it relies upon.
> c. The experience of other insurers or rating organizations.
> d. Any other relevant factors.
> A filing and any supporting information shall be open to public inspection after the filing becomes effective." § 26 28 04(1), N.D.C.C.

Administrative Agencies Practice Act. The pertinent section of that Act is Section 28–32–19, N.D.C.C.[3] In this case, it appears

> "26–28–05. *Disapproval of filings.*—1. If within the waiting period or any extension thereof as provided in subsection 4 of section 26–28–04, the commissioner finds that a filing does not meet the requirements of this chapter, he shall send to the insurer or rating organization which made such filing written notice of disapproval of such filing specifying therein in what respects he finds such filing fails to meet the requirements of this chapter and stating that such filing shall not become effective.

> \* \* \* \* \* \*

> "3. If at any time subsequent to the applicable review period provided for in subsections 1 or 2, the commissioner finds that a filing does not meet the requirements of this chapter, he shall, after a hearing held upon not less than ten days' written notice, specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter, and stating when within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of said order shall be sent to every such insurer and rating organization. Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order." § 26–28–05(1), (3), N.D.C.C.

3. "28–32–19. *Scope of and procedure on appeal from determination of administrative agency.*—The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.
2. The decision is in violation of the constitutional rights of the appellant.
3. Provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

that what we have is a dissatisfaction by the Commissioner with the technique used by Allstate in arriving at its proposed rates.

The district court, in its memorandum opinion supporting its order reversing the Commissioner, said:

"In summary,

"(1) The initial presentation made by Allstate results in a prima facie showing of a need for an increase in rates.

"(2) There is no evidence of record, by way of opinion or otherwise, that would justify some other conclusion.

"(3) The opinions reexpressed by Dr. Ceyhun and Mr. Hoag regarding the adequacy of Allstate's presentation were based on the erroneous assumption that Allstate had not explained or supported its projections and estimates.

"(4) No actual deficiency in Allstate's presentation has been demonstrated.

"(5) The alternate techniques employed by Messrs. Ceyhun and Hoag produce results similar to those obtained by Allstate.

"(6) The Commissioner's conclusion that he is unable to evaluate Allstate's presentation is contrary to the evidence.

"(7) The Commissioner's decision that the application should be denied is contrary to law and should be reversed.

"It is so ordered."

 Notwithstanding that it is important to know what conclusions the trial court reached and upon what facts the court reached its conclusions, as our review under the Administrative Agencies Practice Act, Ch. 28–32, N.D.C.C., is of the findings, conclusions, and decision of the administrative agency, it is crucial that we examine the findings and conclusions of the administrative agency.

Since our decision in *Geo. E. Haggart, Inc. v. North Dakota Workmen's Comp. Bur.*, 171 N.W.2d 104 (N.D.1969), in which we applied the substantial evidence rule,

both Sections 28–32–19, and 28–32–21, N.D. C.C., have been amended.

Most recently, our court speaking through Justice Sand, considered the significance of the amendment to Section 28–32–19(5), N.D.C.C., as follows:

"Section 28–32–19, NDCC, as amended, sets forth the standard for review of the agency's decision in the district court. The only rational legal conclusion that can be reached from the amendment and the *Haggart* case is that on appeal the Supreme Court reviews the administrative agency's decision and not the district court's decision except as to limited permissible action taken by the district court in such matters as attorney's fees on appeal and the taking of additional testimony as provided for in § 65–10–03, NDCC, as amended, § 65–10–01, as amended, and § 28–32–18. Furthermore, the standard of review in the Supreme Court is the same as the standard under which the district court reviews the decision. (§§ 28–32–21, 28–32–19, NDCC).

"Accordingly, we review the decision of the Bureau and consider these issues raised which need to be resolved.

"In considering the issues raised by the claimant whether or not the Bureau's findings are supported by the preponderance of the evidence, we note that § 28–32–19, NDCC, as amended in 1977, requires the Bureau's findings of fact to be supported by a preponderance of the evidence. The immediate previous standard based on the provisions of § 28–32–19, prior to the 1977 amendment and case law, *Bank of Rhame* [*Application of Bank of Rhame*, N.D., 231 N.W.2d 801] infra and predecessors, was substantial evidence.

"Our court, in *Benzmiller v. Swanson*, 117 N.W.2d 281 (N.D.1962), relying upon *Barkow v. Donovan Wire & Iron Co.*, 190 Mich. 563, 157 N.W. 55 (1916), defined

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions and decision of the agency are not supported by its findings of fact.

If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court." § 28–32–19, N.D.C.C.

preponderance of evidence as 'evidence more worthy of belief,' or ' the greater weight of the evidence' or 'testimony that brings the greater conviction of truth.'" *Steele v. North Dakota Workmen's Comp. Bur.,* 273 N.W.2d 692, 696–97 (N.D.1978).

In reviewing the findings of an administrator under the Administrative Agencies Practice Act, notwithstanding the amendment to Section 28–32–19(5), N.D. C.C., because of the constitutional prohibition involved in the doctrine of the separation of powers against delegation of nonjudicial functions to the judiciary and Section 94 of our State Constitution, we must exercise restraint. *See Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur., supra* at 112; *City of Carrington v. Foster County,* 166 N.W.2d 377, 382, 385 (N.D.1969); *see also Tang v. Ping,* 209 N.W.2d 624, 628 (N.D.1973).

In contrast to questions of fact, questions of law are fully reviewable by our court. *See State Hospital v. N. D. Employment Sec. Bur.,* 239 N.W.2d 819, 822 (N.D.1976); *Bank of Hamilton v. State Banking Board,* 236 N.W.2d 921, 925 (N.D.1976); *In re Sales & Use Tax Det. by St. Tax Com'r,* 225 N.W.2d 571, 576 (N.D.1974). Let us examine the Commissioner's findings pertinent to the filing.

From a procedural standpoint, the Commissioner's findings indicate that Allstate made separate filings, one on behalf of Allstate Insurance Company, and the other on behalf of Allstate Indemnity Company, for revised rules and rates, which were disapproved by the Commissioner; that thereafter Allstate sought and received a hearing on the filings, which hearing was conducted by special hearing examiner, Norbert J. Lange, on July 12, 1977; that on August 4, 1977, the Commissioner advised Allstate that its filings had been disapproved because Allstate employed a "trend factor", a practice which the Commissioner disapproved; that on August 17, 1977, Allstate sought a rehearing on the disapproval and that a rehearing was granted and was held on November 22, 1977, before Alfred A. Thompson, as special hearing examiner;

that on December 23, 1977, a delayed exhibit, denominated exhibit no. 23, was filed with the examiner, and that thereafter Allstate sought and received an additional hearing which was held on February 6, 1978; and that thereafter the examiner requested that each side serve and file briefs and proposed findings of fact and that the last of such briefs was received by the examiner on March 30, 1978.

Incidentally, the record discloses that the special hearing examiner filed his findings with the Commissioner on the 6th day of April, 1978, wherein the examiner adopted certain numbered findings proposed by counsel for the Commissioner, adopted certain numbered findings proposed by Allstate, and in addition made special findings.

It is interesting to note that until that time the Commissioner had consistently rejected the filings of Allstate on the grounds that trend factors were used and he did not approve of same. In part 4 of the additional findings submitted by examiner Thompson, it is stated:

"4. That the use of 'trend factors' is a realistic and legally acceptable adjunct to and method of projecting rate-level requirements and of making rate-prognosis and falls within the purview of Sec. 26–28–03(a) [26–28–03, subd. 1, par. a] NDCC."

In the Commissioner's findings dated May 19, 1978, the Commissioner adopted the proposed findings recommended by Examiner Thompson which were recommended by counsel for the Commissioner, but rejected most of the proposed findings submitted by Allstate which were approved and recommended by hearing examiner Thompson. As for the additional findings recommended by the hearing examiner, the Commissioner adopted all of those except part 4. relating to trend factors.

Our view of the Commissioner's findings are that the crucial points are contained in what he has denominated additional findings and more specifically additional findings 4. through 9. They read as follows:

"4. A 'long time' (sample) period in most cases serves better to indicate accu-

rately future trends than does a 'short term' (sample) period.

"5. The straight-line (linear) regression technique employed by Allstate in its application may accurately predict future trends in the industry; but it is not the only technique which may be employed for this purpose, and other techniques should be employed by Allstate in its application to affirm the reliability of the technique Allstate has employed.

"6. The witnesses for the Commissioner, Ceyhoun and Hoag, in their exhibit # 23, have dwelt upon the use of two other trending techniques which might have been employed by Allstate, those techniques defined and set forth on pages # 18 and # 35 of exhibit # 23.

"7. That although Allstate has discounted the reliability of the trending techniques suggested by Ceyhoun and Hoag, in exhibit # 23, Allstate has not conclusively shown such techniques to be inappropriate if employed by Allstate in its filing.

"8. That without the use of alternate techniques, the Commissioner cannot realistically know whether the filing by Allstate accurately defines and supports the propositions which Allstate has set forth in the filing.

"9. Allstate's filings do not meet the requirements of Chapter 26–28 NDCC."

Let us briefly analyze and discuss those additional findings of the Commissioner.

Part 4. does not seem to be a disputable issue or one that is actually disputed, but a reasonable answer was given thereto by Allstate to the effect that because of the advent of no-fault insurance in the recent past in North Dakota, it was not possible to have a long-time sample.

Additional parts 5. through 8. relate to the Commissioner's preference for the application of the two alternative techniques suggested by Dr. Fikret Ceyhun of the Department of Economics of the University of North Dakota, and his associate, Mr. Paul Hoag, over the straight-line regression technique employed by Allstate in its efforts to predict future costs or trends in the industry.

█ Notwithstanding that this court has indicated its reluctance to substitute its own judgment for that of qualified experts in matters entrusted to administrative agencies (see *Johnson v. Elkin*, 263 N.W.2d 123, 130 (N.D.1978); *Bank of Hamilton v. State Banking Board, supra* at 925; *Application of Bank of Rhame*, 231 N.W.2d 801, 811–12 (N.D.1975); *First American Bank & Trust Co. v. Ellwein*, 221 N.W.2d 509, 518 (N.D.1974), *cert den.*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974)), we believe that the Commissioner has a greater responsibility in considering applications of this kind than merely concluding that one or more techniques for determining future costs are more acceptable than the one employed by the applicant.

Unless the technique employed by the applicant in determining the costs results in rates which are excessive, or inadequate, or unfairly discriminatory, contrary to § 26–28–03 subd. 1(d), or unless the Commissioner has established rules after appropriate notice and hearing, which rules appear to have been violated by the applicant in its filing, the filing should be approved. *See* §§ 28–32–02 and 26–28–13, N.D.C.C. For a case generally supporting this proposition, *see Nationwide Mutual Ins. Co. v. Commonwealth of Pennsylvania*, 15 Pa.Cmwlth. 24, 324 A.2d 878 (1974).

In the instant case, a synopsis of the Allstate filing reads as follows:

"In this filing we are increasing rate levels for the bodily injury, property damage and collision coverages and reducing rate levels for the personal injury protection coverage. No change in overall rate level is planned for uninsured motorists, comprehensive or towing. We are also increasing the factors for bodily injury limits above the $10,000/$20,000 level. In addition, we are revising the territorial rate relativities, classification differentials, age and symbol group relativities

and factors for rating the physical damage coverages. Finally, numerous rules changes are included.

"The combined effect of all of these changes is an increase of 18.9 percent in our North Dakota private passenger automobile income."

The filing includes the following pertinent information relative to percentage changes indicated and percentage changes proposed by Allstate:

| | Percent Change | |
| --- | --- | --- |
| "Coverage | Indicated | Proposed |
| Bodily Injury | + 141.4% | + 30.0% |
| Property Damage | + 36.7 | + 30.2 |
| Personal Injury Prot. | − 29.7 | − 20.0 |
| Uninsured Motorists | − 42.0 | N/C |
| Collision | + 39.5 | + 30.0 |
| Comprehensive | − 6.0 | 0.0 |
| Towing | + 2.9 | N/C |
| Total | + 32.1% | + 15.0% |

"As noted above, we are also proposing an increase in our bodily injury increased limits table. The additional income that will be derived from this change increases the 15.0 percent figure shown above to the 18.9 percent used earlier. Based on our 1976 written premium adjusted to current rate level we estimate that this change will increase our North Dakota private passenger automobile income by approximately $329,000."

■ Although the Commissioner has been critical of the fact that Allstate's indicated percentage changes are greater generally than its proposed percentage changes, that alone cannot be a basis for denying the proposed rate changes. In that regard, it is significant to note part two of Section 26–28–03, N.D.C.C., which reads:

"2. Except to the extent necessary to meet the provisions of subdivision d of subsection 1, uniformity among insurers in any matters within the scope of this section is neither required nor prohibited." § 26–28–03(2), N.D.C.C.

■ We have examined all of the exhibits submitted on behalf of Allstate, and particularly exhibit 23 prepared by Dr. Ceyhoun and Mr. Hoag on behalf of the Commissioner, in light of the transcripts of the three hearings, and conclude that Allstate has established a basis for its filing, notwithstanding that Dr. Ceyhoun and Mr. Hoag may be correct in their analysis of the filing to the extent that methodologies, other than the one used by Allstate, are available to determine whether Allstate used the best available one. Illustrative of Mr. Hoag's view is his testimony as follows:

"And when we look at the Allstate document we cannot understand from the document why the straight line is used. Now, again, we are trying to make a good faith argument here and take the best case from Allstate's point of view. If there are technical reasons why straight lines should be used, then it's our position that that ought to be explained in the public record and we comment upon that.

\* \* \* \* \* \*

"we are not saying that Allstate or any other insurance company should be required to use either of these methods. That's not the purpose, and we're not saying that. That's not our position at all. What we are saying is that these two methods are as equally logical and definable as the method used in the Allstate filing. That is, I contend that I could take the Allstate data, the Allstate language, use these particular methods, and I would have an equally logical and defensible filing. I think that it would have many defects just as I think the Allstate filing does. I think it would be an insufficient public record."

Dr. Ceyhoun asserts that one of the alternative approaches suggested by him would be 95 percent reliable in a certain instance, whereas the equation used by Allstate was only 85 percent reliable.[4] Neither he nor

---

4. ". . . We have Allstate's equation which states $Y_5 = 297.318 + 11.874 X$. Now, that's their equation. That only gives us reliability in terms of the $R^2$ which is 85 percent. Well, it only says 85 percent of the time they can be correct, and 15 percent of the time they are wrong. Now, below that one we have alternative one which raised the reliability to 95 percent, almost a ten percent increase."

Mr. Hoag have contended that had their equations been used the results would have indicated that the rate adjustments asked for by Allstate were violative of Section 26–28–01, N.D.C.C., in that they were excessive, inadequate, or unfairly discriminatory.

Lest we leave the impression by this discussion that Allstate agreed that it used an inappropriate method of forecasting costs, it should be noted that Allstate did not so agree, instead it asserted through its senior actuary, Mr. Darrell Ehlert, the reasoning supporting the use of "a simple straight line regression".[5]

■ Allstate and the Commissioner are apparently agreed that the Insurance Commissioner's authority in reviewing a filing is limited and that he, unlike other rate-making authorities, cannot accept the filing in part and reject it in part. It is not so clear, however, that they agree that the Commissioner must either approve or disprove that which the insurance company elects to submit. In support of his position that he may only accept the filing wholly or reject it wholly, the Commissioner refers us to *Nationwide Mutual Insurance Company v. Williams*, 188 So.2d 368, 369 (Fla.Dist.Ct. App.1966). We think that the most relevant part of that decision is that part which reads: "We observe a legislative deficiency upon the subject of regulating insurance rates by not allowing some flexibility on the part of the Insurance Commissioner in reviewing filings." 188 So.2d at 369.

We cite this case and quote the above for the reason that we believe that our legislature could make this field of the law more workable if it permitted the Commissioner authority to accept in part and reject in part. North Carolina has apparently done so, *see State ex rel. Com'r of Insurance v.*

*N. C. Fire Insurance*, 292 N.C. 471, 234 S.E.2d 720, 731 (1977).

■ Throughout the proceedings prior to the taking of this appeal, the Commissioner has taken the view that trending may not be considered in filings of this nature. On appeal, the Commissioner has apparently modified his position by in essence conceding that although trending may be a factor to be considered when giving effect to past and prospective loss experience, as he has the right to weigh the factors, he can weigh certain factors at zero and thus could weigh trending at zero in this case. In support thereof, he refers us to *State ex rel. Com'r of Insurance v. N. C. Fire Insurance, supra.* Our examination of that case causes us to believe that the Commissioner has placed a strained meaning upon it.

"In providing, in G.S. 58–131.2, that the Commissioner shall give consideration to the matters there specifically enumerated, including 'the experience of the fire insurance business' during five years or more, it was obviously not the intent of the Legislature to make any one, or all, of these matters conclusive. The statute directs the Commissioner to give consideration 'to all reasonable and related factors.' The weight to be given the respective factors is for the Commissioner to determine in the exercise of his sound discretion and expertise, but he may not arrive at his determination as to the propriety of the filing by shutting his eyes to experience shown by evidence of reasonably probative value simply because it is not presented to him in the customary statistical form. . . .

"The credibility of evidence, whether offered by the Bureau, the Department of Insurance or a protestant, and the weight to be given such evidence, are to

5. "One of the other reasons why we use a simple linear regression for trends, besides the fact as I have demonstrated here, that it's independent really or less dependent, let's say, on the beginning or ending points that you pick for your past data points, it's something that's been used traditionally in the insurance business. It's a lot easier to understand for both regulators and company managements, I might add, than a third or fourth order equation which gets really hairy when you try to, let's say, check it out as a person in management or a state insurance department rate analyist [sic]."

be determined by the Commissioner. *In re Filing by Fire Insurance Rating Bureau, supra*. However, in this determination, as in other aspects of such rate-making proceeding, *the Commissioner may not act arbitrarily*, rejecting as untrustworthy, for no stated or apparent reason, uncontradicted testimony or data submitted through competent and unimpeached witnesses." 292 N.C. at 488–489, 234 S.E.2d at 729–730. [Emphasis added.]

In that case, the Commissioner had declined to consider certain evidence submitted to it covering a three-year-period indicating a loss apparently because it did not cover the five-year-period. The Supreme Court of North Carolina found that to be error.

It is our view that the Commissioner cannot in the instant case, in the guise of weighing the factors, completely disregard what has been discussed throughout this opinion as trending, or in other words, cannot completely disregard data which includes therein an estimation of prospective losses based upon past experience.

We think appropriate the approach which the trial court suggested in its memorandum opinion as follows:

"As indicated previously herein, Allstate's application results in a prima facie showing that a rate increase is necessary. At that point it becomes incumbent upon someone, including the Commissioner, either to

(1) *demonstrate specifically* that the evidence submitted is in some manner deficient and that the deficiencies are so extensive that the need for the relief requested has not been demonstrated, or

(2) that there is other equally credible evidence of record justifying some other conclusion, or

(3) that it is not possible to make a decision upon the evidence submitted because insufficient information was given.

"In the case of the first two alternatives, the Commissioner would be justified in denying the application. In the case of the third alternative, the appropriate procedure is not to deny the application but to elicit or obtain the missing information and then complete the evaluation."

For the reasons stated in this opinion we conclude that the Commissioner's order is neither supported by a preponderance of the evidence, nor is it in accordance with law; thus it must be reversed. We adopt the judgment of the district court and, accordingly, the judgment of the district court is affirmed.

SAND and PAULSON, JJ., and LARRY M. HATCH, District Judge, concur.

LARRY M. HATCH, D. J., sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Justice, concurring specially.

The Legislature said that the purpose of the casualty insurance rate law is to promote public welfare by regulating insurance rates to the end that those rates not be excessive, inadequate or unfairly discriminatory. The Legislature further said that it was not intended (1) that reasonable competition should be prohibited or discouraged, or (2) that uniformity in insurance rates, rating systems, rating plans or practices should be unnecessarily prohibited or encouraged. Finally, the Legislature said that the law shall be liberally interpreted to carry out these purposes. See § 26–28–01, NDCC.

As far as I can determine after many months of evaluations, administrative hearings and judicial reviews, no one yet has said whether the Allstate rates are excessive, inadequate or unfairly discriminatory.

The author of the majority opinion, in 1970, wrote that "it is not the function of the judiciary to act as a super board of review," and that it is not for the court to substitute its judgment for that of the lawfully designated authorities. See *Appeal of Johnson*, 173 N.W.2d 475 (N.D.1970). Although that was not a review pursuant to

the Administrative Agencies Practice Act, the same principle applies. Ordinarily then, courts should not initially decide the adequacy of insurance rates. That does not mean that we engage in any cat-and-mouse game playing. Expertise of any specific administrator may be questioned politically but judicial restraint requires that we refrain from substituting our judgment for that of the administrator (or questioning his expertise) in every case where he has functioned under a statutory directive.

This all leaves me in a quandary. By affirming the judgment of the district court, which in effect authorized the increased rates for Allstate, it appears that we are fulfilling the function prescribed by the Legislature. Are we not, then, infringing upon the authority of the insurance commissioner and taking on the role of a "super board" or "super commissioner"? I understand the majority opinion to infer that because of the refusal of the commissioner to evaluate Allstate's proposed rates as excessive, inadequate or unfairly discriminatory, the courts must, by necessity, allow them to become effective. This may be the only alternative available, but it impresses me that we are saying to the commissioner, "you didn't do this right," so we are going to penalize the public by making it pay insurance rates which might even be excessive.

The problem is eventually legislative. The all-or-nothing interpretation that both Allstate and the commissioner place upon Chapter 26–28, NDCC, violates my sense of reasonableness. The statute ought to be changed. During oral argument, counsel for the commissioner said that he was always willing to negotiate with applicants. I think that public interest requires that we leave room for those negotiations. My concurrence arises out of necessity—not necessarily conviction.