234 S.E.2d 720 (1977)
292 N.C. 471
STATE of North Carolina ex rel. COMMISSIONER OF INSURANCE
v.
NORTH CAROLINA FIRE INSURANCE RATING BUREAU.
No. 13.
Supreme Court of North Carolina.
May 10, 1977.
*724 Rufus L. Edmisten, Atty. Gen., by Isham B. Hudson, Jr., Asst. Atty. Gen., Raleigh, for the State.
Joyner & Howison by William T. Joyner, Walton K. Joyner and J. E. Tucker, Raleigh, for the North Carolina Fire Ins. Rating Bureau.
LAKE, Justice.
In fairness to the Court of Appeals and to the Commissioner of Insurance, it should be observed that at the times of their respective decisions in this matter neither had the benefit of recent decisions of this Court which are largely determinative of matters here involved. Commissioner of Insurance v. Rating Bureau, 292 N.C. 70, 231 S.E.2d 882 (1977); State ex rel. Commissioner of Insurance v. Automobile Rate Administrative Office, 292 N.C. 1, 231 S.E.2d 867 (1977), and Commissioner of Insurance v. Rating Bureau, 291 N.C. 55, 229 S.E.2d 268 (1976).
The Bureau was created by G.S. 58-125 and was organized pursuant to G.S. 58-127 by the insurance companies writing fire insurance in North Carolina. The Bureau is not a State agency. It is composed of and controlled by these companies. It acts for them in the establishment of premium rates. It files proposed rates with the Commissioner for his approval. G.S. 58-131.1. "For rate making purposes, the Bureau is to be regarded as if it were the only insurance company operating in North Carolina and as if it had an earned premium experience, an incurred loss experience and an operating expense experience equivalent to the composite of those of the companies actually in operation." In re Filing by Fire Insurance Rating Bureau, 275 N.C. 15, 32, 165 S.E.2d 207, 219 (1968).
The Commissioner has no inherent power to fix premium rates. His authority is confined to that conferred upon him by the *725 General Assembly in Chapter 58 of the General Statutes. Commissioner of Insurance v. Automobile Rate Office, 287 N.C. 192, 214 S.E.2d 98 (1973); In re Filing by Fire Insurance Rating Bureau, supra.
G.S. 58-131.1 provides:
"No rating method, schedule, classification, underwriting rule, bylaw, or regulation shall become effective or be applied by the Rating Bureau until it shall have been first submitted to and approved by the Commissioner. * * * Every rating method, schedule, classification, underwriting rule, bylaw or regulation submitted to the Commissioner for approval shall be deemed approved, if not disapproved by him in writing within 60 days after submission." (Emphasis added.)
In Commissioner of Insurance v. Rating Bureau, 292 N.C. 70, 231 S.E.2d 882 (1977), we said:
"Operation of the `deemer' provision can be averted only by the approval or disapproval of the Commissioner within 60 days. * * *
"In establishing the rate-making procedures, the Legislature provided three methods by which the Commissioner may dispose of proposed rate changes, to wit: (1) He may approve the proposed rate adjustment; (2) he may disapprove it; or (3) he may do neither for 60 days and the proposal is thereupon deemed approved. G.S. 58-131.1. To avoid the automatic operation of the deemer provision, the Commissioner must approve or disapprove the proposal in writing within 60 days after submission. Approval or disapproval necessarily contemplates action by the Commissioner, and a public hearing is required prior to such action upon a proposed material rate change. G.S. 58-27.2(a). * * *
"[W]e find no merit in the contention of the Commissioner that his action in setting a hearing date tolled the running of the 60-day period."
Thus, the Court of Appeals erred in its conclusion that the "deemer provision" of G.S. 58-131.1 did not cause the premium rate changes proposed in the filing to take effect on 8 October 1975.
In the case last cited, we also said:
"Since the `deemer' provision operates in conjunction with the hearing provisions, it cannot stand alone as a final resolution of the proposal. Final resolution comes only after a valid approval or disapproval by the Commissioner. We hold, therefore, that where, as here, the deemer provision is triggered by failure of the Commissioner to validly approve or disapprove a proposed rate adjustment, it operates only as a temporary approval pending valid action by the Commissioner as contemplated by G.S. 58-27.1(c) and G.S. 58-27.2(a). Thus, in the present case, the Bureau is lawfully entitled to place the proposed rates into effect, prospectively, under the deemer provision until such time as a valid final order is entered by the Commissionereither in this proceeding or in a subsequent filing." (Emphasis added.)
Chapter 58 of the General Statutes contains no provision comparable to G.S. 62-134(b) whereby the Utilities Commission is authorized to set for hearing a proposed rate increase by a public utility and to suspend such proposed rates pending such hearing, nor does it contain a provision comparable to G.S. 62-135 whereby a public utility, notwithstanding such suspension, may put its proposed rate increase into effect by filing a bond to assure refund of the collected increase to the extent that it may ultimately be disallowed. The insurance rate-making procedure is, however, somewhat analogous to the provision in G.S. 62-134(b) which limits the authority of the Utilities Commission to suspend a proposed increase in rates, pending hearing, to a period of 270 days and which provides that if the hearing has not been concluded and an order made within such period, "the proposed change of rate shall go into effect at the end of such period" and further provides that "after hearing, whether completed before or after the rate goes into effect, the Commission may make such order with respect thereto as would be proper in a *726 proceeding instituted after it had become effective."
In the silence of Chapter 58 of the General Statutes upon this aspect of insurance premium rate regulation, we conclude: (1) Notwithstanding the Commissioner's having set the filing for hearing, the action of the Bureau in putting the proposed premium rates into effect on 8 October 1975, more than 60 days after the submission of the filing, was lawful. (2) Such proposed rates thereupon became as effective as if they had been formally approved by the Commissioner and their subsequent collection, pending further action by the Commissioner, was lawful. (3) The premium rates, so made effective by the operation of the "deemer provision," continue in effect until disapproved, in whole or in part, by an order of the Commissioner issued pursuant to the authority granted him by Chapter 58 of the General Statutes, or until otherwise changed pursuant to such chapter. (4) Premiums lawfully collected, pursuant to such filing, are not subject to refund, even though the filing be subsequently disapproved by the Commissioner. (5) The taking effect of the filing, pursuant to the "deemer provision," does not abort the hearing previously ordered by the Commissioner. (6) At such hearing, the Commissioner may proceed as if the "deemer provision" had not put the filing into effect and, upon the conclusion of the hearing, he may issue such order as would have been within his authority had the filing not taken effect pursuant to the "deemer provision." (7) Such order of the Commissioner, otherwise valid, may approve or may disapprove the filing in whole or in part. (8) Such disapproval takes effect from the date of the order but is not retroactive and so does not render unlawful the collection of premiums made prior thereto so as to require, or authorize the requirement of, a refund thereof.
We come, therefore, to the question of whether the Commissioner's order of 6 November 1975, disapproving the filing, was within his authority so as to terminate, as of that date, the effectiveness of the filing.
There is no presumption that a filing by the Bureau is correct and proper, the burden being upon the Bureau to show that the rate schedule, so proposed by it, is fair and reasonable. Commissioner of Insurance v. Rating Bureau, 292 N.C. 70, 231 S.E.2d 332 (1977); In re Filing by Fire Insurance Rating Bureau, supra; In re Rating Bureau, 245 N.C. 444, 96 S.E.2d 344 (1956). That is, the burden is upon the Bureau to prove that the proposed premium rates will enable it (considering the Bureau as the composite of all companies writing Homeowners insurance in North Carolina) to collect, upon policies to be issued after the effective date of the filing, premiums which will enable it (1) to pay losses to be incurred during the life of such policies at replacement costs prevailing at the time of such losses, (2) to pay other proper operating expenses, and (3) to retain a fair and reasonable profit and no more. In re Filing by Fire Insurance Rating Bureau, supra.
G.S. 58-131.2 provides in part:
"In determining the necessity for an adjustment of rates, the Commissioner shall give consideration to all reasonable and related factors, to conflagration and catastrophe hazards, both within and without the State, to the past and prospective loss experience, including the loss trend at the time the investigation is being made, and in the case of fire insurance rates, to the experience of the fire insurance business during a period of not less than five years next preceding the year in which the review is made." (Emphasis added.)
Obviously, this provision of the statute is far from clear. Does it mean that evidence of each of the specifically enumerated items to which the Commissioner "shall give consideration" is a sine qua non to a determination by the Commissioner of the necessity for a reduction or an increase in premium rates, so that, in absence of evidence of such item, the determination must be adverse to the party having the burden of proof, even though there is ample evidence of other "reasonable and related factors" to support a determination that premium rates *727 presently in effect are producing excessive or inadequate profits for the insurance companies? If evidence as to conflagration hazards points in one direction, due to recent developments, while "the experience of the fire insurance business" over a period of five years or more points in the opposite direction, which controls the determination of the Commissioner?
In re Rating Bureau, supra, involved a proposal by the Bureau for an increase in the premium rate for fire insurance on farm dwellings disproportionate to this simultaneously proposed increase in the premium rate for like insurance on non-farm dwellings similarly situated, similarly constructed and similarly protected against the hazard of fire. The Court affirmed the Commissioner's order disapproving the proposed increase on the ground that it was discriminatory and thus in violation of G.S. 58-131. The following statements in the opinion of the Court, which spoke through Justice Denny, later Chief Justice, are, therefore, dicta:
"It is apparent, we think, under the provisions of G.S. 58-131.2, that the General Assembly has never authorized a fire insurance rate to be fixed upon a consideration of hazard alone." (P. 450, 96 S.E.2d p. 349.)
"At the above hearing [before the Commissioner upon an earlier filing] it appears the Rating Bureau furnished experience on farm dwellings for the year 1953 only. Naturally, the Commissioner had no right to consider a rate for fire insurance except one based on the experience for a period of not less than five years next preceding the year in which the review was made and the other factors enumerated in the statute. G.S. 58-131.2." (P. 448, 96 S.E.2d p. 347.) (Emphasis added.)
In that case, the Court noted (P. 449, 96 S.E.2d p. 347):
"In the hearing before the Commissioner on the present request for an increase in fire insurance rates on farm property, the Rating Bureau furnished the experience on farm dwellings sub-Class 024 for the years 1953 and 1954 which showed a loss ratio in 1953 of 93.37% and for 1954 of 96.25%. Since this was for a period of less than five years, as required under G.S. 58-131.2, the Rating Bureau based its request on the loss ratio for Class 021, which includes sub-Classes as follows: 024, Farm Dwellings; 025, Farm Property * * *; 026, Tobacco Curing Barns; 029, Tobacco Pack Barns; 028, TobaccoHarvested CropFarm Floater Form."
The Court, after overruling the Bureau's assignment of error to the Commissioner's rejection of the filing as discriminatory against farm dwellings, said (P. 452, 96 S.E.2d p. 350):
"The appellant [Bureau] also assigns as error the conclusion of law [made by the intermediate reviewing court] to the effect that the following finding of fact is supported by substantial evidence in the record and is correct and proper: `That the North Carolina Fire Insurance Rating Bureau did not conform to the General Statute 58-131.2, which requires that fire experience on any class be kept for five years and that the Rating Bureau did not present such experience on unprotected farm property, sub-Class 024.
"In view of the fact that the requested increase was based on the loss ratio of Class 021 as a whole, which includes sub-Class 024, in our opinion this latter finding was not essential to the decision reached in the lower court. Hence, we deem it unnecessary to consider or discuss this assignment of error." (Emphasis added.)
Thus, In re Rating Bureau, supra, did not determine whether a failure by the Bureau to present evidence of more than two years' experience of the companies would per se, and as a matter of law, authorize the Commissioner to disapprove its filing proposing an increase in the insurance premium rate for fire insurance. Our research has disclosed no other decision of this Court in which this question was presented and the briefs of the parties referred to no authorities upon that question. For reasons set forth below, we do not deem the determination *728 of that question essential to our decision upon the present appeal and we do not here determine it.
In its brief, the Bureau asserts that the requirement in G.S. 58-131.2, whatever it may mean, that "the Commissioner shall give consideration * * * in the case of fire insurance rates to the experience of the fire insurance business during a period of not less than five years next preceding the year in which the review is made," has no application to this proceeding since we are here dealing with Homeowners insurance, not fire insurance. (Emphasis added.) We reject that contention. The record shows that the expert witness for the Bureau testified that Homeowners insurance first came into use in North Carolina in 1960, some fifteen years after the enactment of G.S. 58-131.2, and that the predominant cause of loss under Homeowners policies is fire. Consequently, we deem Homeowners insurance to be fire insurance within the meaning of G.S. 58-131.2.
In the present proceeding, the Commissioner made these conclusions of law, to each of which the Bureau has excepted:
"1. That the statistics from page 14 of Annual Statements [to the Department of Insurance by all companies writing homeowners insurance in North Carolina] are not appropriate for ratemaking purposes.
"4. That the filing is based on only three years (3) of appropriate ratemaking statistics.
"5. G.S. 58-131.2 does not permit the Commissioner to approve a rate which is based on experience of less than five years next preceding the year in which the review is requested."
Consequently, the Commissioner did not "give consideration" to this evidence introduced by the Bureau in reaching his determination that the filing should be disapproved. He so refused to "give consideration" to this evidence on the ground that, as a matter of law, it cannot be a basis for a determination by him that the rates in effect prior to the operation of the "deemer provision" are inadequate to produce "a profit which is fair and reasonable." In this we think the Commissioner was in error.
Assuming, without deciding, that G.S. 58-131.2 requires the Rating Bureau to introduce evidence of five years' experience upon the pain of having its filing disapproved, we reach the conclusion that in the hearing before the Commissioner it did so by offering (1) "Three years of experience for the years 1969-1971 utilizing approved [by the Department of Insurance] statistical plans and programs for collecting ratemaking data for all companies writing homeowners insurance in North Carolina," plus (2) for 1972 a combination of such "approved" statistics for many of the companies and what are called "Page 14" statistics for the others, plus (3) "Page 14" statistics for 1973 experience of all the companies writing homeowners insurance in North Carolina. That the Bureau so supported its filing appears from the Commissioner's findings of fact. It also introduced "Page 14" data concerning 1974 experience.
We find nothing in Chapter 58 of the General Statutes which precludes the Commissioner from giving consideration to "Page 14" statistics in determining the propriety of a filing proposing an increase in premium rates. The rules adopted by the Insurance Advisory Board, pursuant to G.S. 58-27.1(c) concerning hearings to be held by the Commissioner or his authorized representative, remain presently in effect, notwithstanding the Administrative Procedure Act. G.S. 150A-15. These rules include the following provisions:

Rule 6: "Public hearings shall be conducted in an orderly but informal manner. The hearing officer shall admit all evidence of any type having reasonable probative value, and shall include in the evidence any relevant or material evidence which may be made available to him by any records of the Insurance Department or disclosed by any investigation or study of the problem by personnel of the Department. Irrelevant, immaterial or unduly repetitious *729 evidence shall be excluded. Any evidence of the type upon which responsible persons are accustomed to rely in the conduct of insurance affairs shall be deemed to have reasonable probative value. A hearing may be continued when such continuation is, in the Commissioner's judgment, warranted." (Emphasis added.)

Rule 7: "The hearing officer shall have authority to require the bureau or company which is the proponent of the rate filing to produce and exhibit such books, documents, records and other data as may be necessary to fulfill the purposes of the hearing."

Rule 13: "Subsequent to a public hearing on a filing made with the Insurance Department, immediate consideration shall be given to all the information available. * * *"
We have said, with reference to evidence submitted to show cost trends: "It is not a proper ground for the rejection of such evidence that such projection of an upward or downward cost trend into the future has never before been used in the rate making process. The statute does not contemplate that procedures and methods for determining replacement costs for the future shall be frozen." In re Filing by Fire Insurance Rating Bureau, supra, 275 N.C. at p. 36, 165 S.E.2d at p. 222. The same is true with reference to evidence of the companies' past experience. Its credibility and weight, as distinguished from its relevancy, are, of course, to be determined by the Commissioner, but he may not preclude it from any consideration whatever if it is of a type "upon which reasonable persons are accustomed to rely in the conduct of insurance affairs" merely because it is not in the form customarily introduced in premium rate hearings.
With reference to the Bureau's use of "Page 14" data in support of the filing, its expert witness testified:
"The `74 figures on that exhibit were certainly nothing that could be contested. They are from page fourteen as reported to the Insurance Commissioner and they show that the industry in North Carolina lost six point two million dollars last year from homeowners insurance. * * * [T]he context in which this information is presented is to show the substantial need for increase that the companies have. It's not purported to be ratemaking data as such. * * * It's to indicate the financial position of the companies in North Carolina. * * * With most lines of insurance, the page fourteen is not as valuable as it is for homeowners, for any indication of rate-making. * * But in homeowners, since losses are paid very, very quickly it is a very good indicator, and comparing the page fourteen results with our later available classified data we get very, very good correlations. So it is a very good indicator of what is happening and what the full and complete rate-making data will result in."
No effort was made by the Department of Insurance to refute this testimony, either by cross-examination or by other witnesses or exhibits.
In a proceeding initiated by the Commissioner to consider the propriety of a reduction in the premium rate because of excessive profits accruing to the companies under existing rates, surely "Page 14" figures taken from the companies' reports to him would qualify as competent evidence of the "experience of the fire insurance business" within the meaning of G.S. 58-131.2 and could be given "consideration" by him. It is equally competent in consideration of a filing by the Bureau.
In providing, in G.S. 58-131.2, that the Commissioner shall give consideration to the matters there specifically enumerated, including "the experience of the fire insurance business" during five years or more, it was obviously not the intent of the Legislature to make any one, or all, of these matters conclusive. The statute directs the Commissioner to give consideration "to all reasonable and related factors." The weight to be given the respective factors is for the Commissioner to determine in the exercise of his sound discretion and expertise, but he may not arrive at his determination *730 as to the propriety of the filing by shutting his eyes to experience shown by evidence of reasonably probative value simply because it is not presented to him in the customary statistical form. Nor does the statute require him to give equal weight to the experience of the companies in each year of the five-year, or longer, period studied where, as here, there is evidence that, by reason of inflation or some other circumstance, the more recent years are more indicative of the future need. In re Filing by Fire Insurance Rating Bureau, supra.
The ultimate question for the Commissioner's determination is whether the proposed rates will, after provision for reasonably anticipated losses and operating expenses, leave for the insurers (considered as if the Bureau were a single company with the composite experience of all companies issuing Homeowners insurance in North Carolina) a fair and reasonable profit and no more. The purpose of the entire statutory plan is to provide for the public, at reasonable cost, insurance in financially responsible companies. In re Filing by Fire Insurance Rating Bureau, supra. The public interest extends as truly to the financial responsibility of the insurer as it does to the reasonable cost of the insurance to the insured, and vice versa.
The credibility of evidence, whether offered by the Bureau, the Department of Insurance or a protestant, and the weight to be given such evidence, are to be determined by the Commissioner. In re Filing by Fire Insurance Rating Bureau, supra. However, in this determination, as in other aspects of such rate-making proceeding, the Commissioner may not act arbitrarily, rejecting as untrustworthy, for no stated or apparent reason, uncontradicted testimony or data submitted through competent and unimpeached witnesses.
In the present proceeding, there was no evidence in conflict with that presented by the Bureau, concerning the merits of the filing. There was no cross-examination of witnesses for the Bureau concerning the statistics upon which it based the filing, or otherwise relating to the merits of the filing. No finding of fact or conclusion stated by the Commissioner, in his order disapproving the filing, contains a finding or a suggestion that any of the statistical data presented by the Bureau, or any expert opinion based thereon, is not credible or is not accurate.
Without impugning the motives of the Commissioner, and without intent to express concurrence in the characterization by the Court of Appeals of his actions and inactions with reference to this and other rate filings, we hold that his Conclusion No. 17 ("That the filing is improper, and the rates, rating schedules and methods proposed in the filing are unwarranted, unreasonable, improper, unfairly discriminatory and not in the public interest") is not supported by evidence in the record and is, therefore, legally arbitrary and in excess of his statutory authority.
We observe that both the Commissioner and the Bureau are enmeshed in a statutory plan for rate-making so ambiguous and unclear that legislative revision appears to offer more likelihood of future harmony between the Commissioner and the Bureau, in their efforts to bring about a realization of the dual legislative purpose of insurance at reasonable cost in financially responsible companies, than does piecemeal construction of the statutes through what is now rapidly assuming the proportions of an interminable series of judicial reviews of orders by the Commissioner.
The order of the Commissioner in the present proceeding is comparable to a judgment of dismissal of a civil action on the ground that the plaintiff's evidence is not sufficient, as a matter of law, to show any right to relief. It is well established that for the purposes of judicial determination of a motion for such a judgment in a civil action, the evidence presented by the plaintiff must be considered as true and the plaintiff must be given the benefit of every reasonable inference to be drawn therefrom. See, Strong, N.C. Index 2d, Trial, § 21, and cases there cited. in the present state of the record, a like rule should be *731 applied in determining the validity of the Commissioner's order disapproving the present rate filing. The order of the Commissioner fails to survive that test.
Given the benefit of such inference and interpretation, the evidence of the Bureau is sufficient to show that the companies writing Homeowners insurance in North Carolina, considered as a composite whole, are not making, and in the reasonably foreseeable future cannot be expected to make a reasonable profit if limited to the premium rates in effect at the time the filing was submitted to the Commissioner and heard by him. On the contrary, the evidence of the Bureau, when taken to be true, shows that the companies, so limited, have been sustaining, and will in the future sustain, a substantial loss upon such business. If this be the correct ultimate conclusion, even a substantial number of flyspecks discovered upon the evidence supporting the filing will not contaminate it to the extent justifying a complete disapproval. It is to be remembered that the Commissioner is not required to approve or disapprove the filing in toto but may approve it in part. State ex rel. Commissioner of Insurance v. Automobile Rate Administrative Office, 292 N.C. 1, 231 S.E.2d 867 (1977); In re Filing by Fire Insurance Rating Bureau, supra.
The evidence of the Bureau was that the companies need an increase of "15.4 per cent in premium income to made the standard 6 per cent profit"; that is, to realize a profit of 6 per cent of the gross premiums received. There is no evidence in the record other than this use of the word "standard" to show that 6 per cent of gross premiums received is a fair and reasonable profit upon Homeowners insurance written in North Carolina. "There is nothing sacrosanct about 6 per cent in this connection. * * * Like construction costs and consumer prices, a `fair and reasonable profit' varies from time to time." In re Filing by Fire Insurance Rating Bureau, supra. However, all of the evidence in the present record, taken to be true, indicates that the companies, considered as a whole, cannot reasonably expect to make any profit whatever by using premium rates in effect at the time this filing was submitted to the Commissioner.
What rates are necessary to entitle the companies to earn a fair and reasonable profit, and no more, "cannot be determined without specific findings of fact, upon substantial evidence, as to (1) the reasonably anticipated loss experience during the life of the policies to be issued in the near future, (2) the reasonably anticipated operating expenses in the same period, and (3) the per cent of Earned Premiums which will constitute a `fair and reasonable profit' in that period." In re Filing by Fire Insurance Rating Bureau, supra. The Commissioner made no finding as to any of these matters in the order not before us for review. The Commissioner has not found that the rates in effect at the time the present filing was submitted to him will yield to the companies a fair and reasonable profit on their Homeowners insurance business in North Carolina.
Obviously, no reasonably accurate prediction of the profit to be realized in the future from the writing of Homeowners liability insurance in North Carolina can be made without first making a reasonably reliable prediction of losses and other operating expenses to be incurred by the companies in connection with their North Carolina business. In making this determination, the Commissioner is not required by the statute to accept the Bureau's conclusion, unsupported by evidence more persuasive than a mere declaration of its expert witness, that the proportion of such losses and expenses to gross premiums collected upon North Carolina policies is the same as the proportion of these items to gross premiums on a "countrywide" basis. In the present record, there is no other evidence of this alleged fact.
It is true that G.S. 58-131.2, in the portion above quoted, provides that the Commissioner shall give consideration to "the conflagration and catastrophe hazards, both within and without the State," in determining the necessity for an adjustment *732 of rates, thus indicating the Legislature's intent that he be not limited to North Carolina data in determining reasonable and adequate rates. However, it is further to be observed that this phrase, "both within and without the State," does not appear to have application to the "experience" factor to be considered by the Commissioner. Nothing in the statute indicates a legislative intent to direct the Commissioner to accept "countrywide experience" as indicative of losses and expenses to be anticipated in connection with North Carolina business. On the other hand, nothing in the present record refutes the testimony of the Bureau's expert witness to the effect that she knows of no reason to suppose that it does not fairly represent experience of the companies in connection with their Homeowners insurance business in this State.
It would appear highly improbable that the expenses of the companies, other than the payment of losses, in connection with their North Carolina business vary in direct proportion to gross premiums collected. It is hardly likely that the salaries of filing clerks, secretaries and administrative officers of the company, office rent and many other home and regional office expenses are fixed on this basis. there is, in this record, no evidence that this is or is not true.
The Court of Appeals was in error in continuing in effect the rates proposed in the filing "in the exercise of the inherent power of the court." Neither the Court of Appeals nor this Court has the inherent power to fix rates of insurance premiums. These are fixed by the filing of the Bureau, pursuant to the "deemer provision" in G.S. 58-131.1, subject to the authority of the Commissioner, by a properly supported order, issued after a hearing as prescribed by the statute, to approve or disapprove such rates in whole or in part, and, if they be disapproved in whole or in part, to fix for the then future the rates to be charged.
The order issued by the Commissioner disapproving the filing here in question does not so comply with the statutory procedures in the respects above set forth and, therefore, the judgment of the Court of Appeals vacating that order is hereby affirmed. The consequence is that the rates proposed in the filing and set into effect by the "deemer provision" remain presently in effect and will so remain in effect until changed by a lawfully issued order of the Commissioner or by a further filing.
The proceeding initiated by the submission of the filing here in question to the Commissioner and set by the Commissioner for hearing is hereby remanded to the Court of Appeals with direction that it further remand the proceeding to the Commissioner. Thereupon, the Commissioner may, in his discretion, discontinue this proceeding by withdrawing his order setting it for a hearing, thus leaving in effect the rates put into effect pursuant to the "deemer provision"; or he may again set the matter for a hearing to be conducted and determined pursuant to this opinion; or he may discontinue the present proceeding and, thereupon, institute a new proceeding pursuant to G.S. 58-131.2 "to investigate * * * the necessity for a reduction or increase in rates" now in effect pursuant to the "deemer provision," first giving due notice of such hearing to the Bureau and to the public. Commissioner of Insurance v. Rating Bureau, 292 N.C. 70, 231 S.E.2d 882 (1977); Commissioner of Insurance v. Rating Bureau, 291 N.C. 55, 229 S.E.2d 268 (1976).
The judgment of the Court of Appeals is, therefore, reversed and the matter is remanded to that court with direction that it issue its judgment further remanding it to the Commissioner of Insurance for further proceedings by him in accordance with this opinion.
REVERSED AND REMANDED.