**STATE EX REL. COMR. OF INS. v. N.C. RATE BUREAU**

[95 N.C. App. 157 (1989)]

STATE OF NORTH CAROLINA ex rel. COMMISSIONER OF INSURANCE, Appellee v. NORTH CAROLINA RATE BUREAU, Appellant, IN THE MATTER OF A FILING DATED JULY 1, 1987 BY THE NORTH CAROLINA RATE BUREAU FOR REVISED AUTOMOBILE INSURANCE RATES—PRIVATE PASSENGER CARS AND MOTORCYCLES

No. 8810INS865

(Filed 15 August 1989)

**Insurance § 79.3— automobile insurance rate filing—disapproval by Insurance Commissioner—insufficiency of findings**

The Insurance Commissioner erred in disapproving the Rate Bureau's 1 July 1987 automobile insurance rate filing and ordering into effect overall decreases in the existing rates where the Commissioner's findings did not sufficiently explain the factual basis for his underwriting profit and contingency provisions, did not indicate how dividends and deviations were considered in his ratemaking formula, did not indicate how he resolved conflicting evidence, did not show what adjustments he found necessary to make, and did not indicate what calculations he considered more reliable.

APPEAL by North Carolina Rate Bureau from Order of North Carolina Commissioner of Insurance entered 1 February 1988. Heard in the Court of Appeals 15 March 1989.

*Hunter, Wharton & Lynch, by John V. Hunter, III; and Parker, Sink, Powers, Sink, Potter & Nelson, by E. Daniels Nelson, for plaintiff appellee.*

*Young, Moore, Henderson & Alvis, P.A., by Charles H. Young, Jr., Marvin M. Spivey, Jr., and R. Michael Strickland, for defendant appellants.*

COZORT, Judge.

The North Carolina Rate Bureau has appealed to this Court an Order of the Commissioner of Insurance disapproving the Bureau's 1 July 1987 rate filing and ordering into effect overall decreases in the existing rates. The Bureau contends that the Commissioner's underwriting profit and contingencies provisions are not supported by substantial and material evidence, and that the Commissioner failed to make sufficient findings of fact and conclusions of law. We vacate and remand for further findings.

STATE EX REL. COMR. OF INS. v. N.C. RATE BUREAU

[95 N.C. App. 157 (1989)]

In its 1 July 1987 rate filing, the North Carolina Rate Bureau proposed average rate level changes of + 15.8% for non-fleet private passenger automobile liability insurance and − 11.6% for physical damage, or an overall average rate increase of 3.5%. The Bureau also submitted a 5.2% increase in motorcycle liability insurance rates and a 2.7% decrease in motorcycle physical damage rates, or an overall average rate increase of 3.2%. Following his review of the filing, the Commissioner issued a Notice of Public Hearing pursuant to Article 12B of Chapter 58 of the General Statutes, in which he set forth what he contended were deficiencies in the filing. A hearing was thereafter held from 11 January 1988 until 21 January 1988. By Order issued 1 February 1988, the Commissioner ordered rate changes of + 8.6% for automobile liability insurance and − 18.7% for automobile physical damage insurance, with an overall average rate decrease of 3.9%. He further ordered rate changes of − 1.0% for motorcycle liability insurance and − 7.4% for motorcycle physical damage insurance, an overall average rate decrease of 2.6%. The Commissioner's actions in ordering into effect rates lower than those in the filing were based on his adoption of expense trends and underwriting profit and contingency provisions lower than those used by the Bureau. On appeal, the Bureau challenges those portions of the Order relating to the underwriting profit and contingency provisions. The Bureau does not contest the Commissioner's findings regarding expense trends.

The Bureau raises two assignments of error. First, it argues that the Commissioner's underwriting profit and contingency provisions will not enable insurers to achieve a fair and reasonable profit because the Commissioner (1) failed to take into account the effects of rate deviations and dividends to policyholders, (2) averaged the underwriting profit recommendations of the expert witnesses for the Department of Insurance, and (3) adopted underwriting profit provisions based on calculations which failed to distinguish between insurers' surplus and their net worth. Second, the Bureau contends that the Commissioner failed to make findings of fact and conclusions of law sufficient to allow judicial review.

N.C. Gen. Stat. § 58-124.32 provides, in part, the following:

If the Commissioner after the hearing finds that the filing does not comply with the provisions of this Article, he may issue an order disapproving the filing, determining in what respect the filing is improper, and specifying the appropriate

rate level or levels that may be used by the members of the Bureau instead of the rate level or levels proposed by the Bureau filing, unless there has not been data admitted into evidence in the hearing that is sufficiently credible for arriving at the appropriate rate level or levels.

N.C. Gen. Stat. § 58-124.32(d) (Cum. Supp. 1988). In approving or disapproving rates that are not "excessive, inadequate or unfairly discriminatory," the Commissioner must give due consideration to the statutory factors set forth in § 58-124.19, including "a reasonable margin for underwriting profit and to contingencies" and "dividends, savings, or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members, or subscribers." *See* N.C. Gen. Stat. § 58-124.19(1), (2) (Replacement 1982). In reaching his ultimate determination, the Commissioner must make findings which clearly and specifically indicate the facts on which he bases his order, the resolution of conflicting evidence, and the consideration he has given to the material and substantial evidence that has been offered. *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 75 N.C. App. 201, 228, 331 S.E.2d 124, 143, *disc. review denied*, 314 N.C. 547, 335 S.E.2d 319 (1985). *See also* N.C. Gen. Stat. § 58-9.4 (Replacement 1982).

In his 1 February 1988 Order, the Commissioner made the following findings with respect to underwriting profit and dividends and deviations:

7. The Commissioner has given due consideration to the 5% underwriting profit and contingencies factor contained in the Bureau's filing exhibits and other evidence and testimony put forth by the Bureau on the matter of an overall adequate profit during the course of the hearing.

8. The Commissioner has given consideration to the evidence put forth by the Department concerning the matter of a reasonable underwriting profit and contingencies factor and concerning investment income earned or realized by insurers from their unearned premium, loss and loss expense reserve funds generated from business in this State to ensure an overall adequate profit.

9. Expert testimony concerning the rate of return for industries of risk comparable to the property and casualty insurance industry was received at the hearing to assist the Com-

missioner in deciding the appropriate underwriting profit and contingencies factor. The appropriate underwriting profit and contingencies factor was determined in such a manner that the return on equity for insurance companies would be equivalent to those of businesses of comparable risk.

\* \* \* \*

11. When compared to other industries of comparable risk the property and casualty insurance industry writing private passenger car and motorcycle insurance, requires a rate of return on equity of approximately thirteen (13%) percent to ensure a reasonable profit to the insurance companies after considering investment income from reserves as allowed by Article 12B of Chapter 58 of the North Carolina General Statutes, and giving due consideration to the enumerated rating criteria of Article 12B of Chapter 58 of the North Carolina General Statutes including but not limited to dividends and deviations.

12. A five percent (5%) underwriting profit and contingencies factor for underwriting as filed by the Bureau in their Exhibit 1 and supporting evidence would produce a return on equity for liability and physical damage coverages in excess of thirty percent (30%) and would result in an excessive profit for the insurance companies.

13. A return on equity of approximately thirteen percent (13%) for private passenger car and motorcycle coverages would produce in North Carolina a reasonable profit for the Bureau's member companies when compared to other businesses of comparable risk. At least a thirteen percent return on equity can be achieved by the use of an underwriting profit and contingencies factor of minus one and nine tenths percent (– 1.9%) for liability coverage and zero percent (0.0%) for physical damage coverage. This underwriting profit and contingencies factor of minus one and nine tenths percent (– 1.9%) for liability and zero percent (0.0%) for physical damage would produce, without considering investment income from capital and surplus accounts, and considering investment income on reserves only as allowed by Article 12B of Chapter 58 of the North Carolina General Statutes, an overall adequate profit to the insurance companies.

We agree with the Bureau that these findings do not sufficiently explain the factual basis for the Commissioner's underwriting profit and contingency provisions. We therefore must vacate and remand. On remand, the Commissioner must make findings which show how he has considered and resolved the evidence bearing on the issues raised by the Bureau on appeal.

The Bureau argues that the Commissioner did not consider dividends and deviations and thus the manual rates set by the Commissioner's Order will not in fact produce a 13% rate of return if dividends and deviations are allowed as they historically have been. The problem with the Bureau's argument is that the Commissioner found that he had given "due consideration" to dividends and deviations as required by statute. The problem with the Commissioner's finding is that it is so unspecific as to preclude judicial review. The Commissioner must on remand make specific findings indicating *how* dividends and deviations were considered in his ratemaking formula.

The Bureau further argues that the Commissioner's underwriting profit and contingency provisions are not supported by the evidence because he merely "averaged" the underwriting recommendations of the expert witnesses Wilson and O'Neill, who testified for the Department of Insurance. The Bureau contends that the Commissioner based his underwriting profit figures on evidence which calculated "net worth" as if it were "surplus," arguably a significantly lower figure. Again, we believe that the Commissioner must on remand make findings which indicate the basis of the underwriting provisions adopted in his Order.

Wilson testified that an underwriting profit provision of − 3.1% for liability and − 1.2% for physical damage would produce a return on net worth of 13%, which was the rate of return adopted by the Commissioner. O'Neill testified that underwriting provisions of − 0.7% for liability and a + 1.2% for physical damage would produce a 10.9% return. Furthermore, O'Neill's testimony indicated that she considered investment income on capital, which may not be considered in insurance ratemaking in this State. *See State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 444, 269 S.E.2d 547, 586 (1980).

The Commissioner adopted underwriting provisions different from those recommended by the witnesses. He is an expert in the field and was well within his authority in doing so. Furthermore,

he found that his calculations did not include a consideration of investment income from capital and surplus accounts, and that his underwriting provisions would allow a return on net worth of 13%. We believe, however, that in his Order the Commissioner must make findings that clearly show *how* he has resolved the conflicting evidence, what adjustments he found necessary to make, and what calculations he considered more reliable.

The Commissioner is authorized to receive additional evidence if deemed necessary to comply with this opinion.

Vacated and remanded.

Judges EAGLES and GREENE concur.