STATE OF NORTH CAROLINA EX REL. COMMISSIONER OF INSURANCE v. NORTH CAROLINA RATE BUREAU; IN THE MATTER OF THE FILING DATED MAY 1, 1995 AND AMENDED APRIL 1, 1996 BY THE NORTH CAROLINA RATE BUREAU FOR REVISED AUTOMOBILE INSURANCE RATES—PRIVATE PASSENGER CARS AND MOTORCYCLES

No. 307A98

(Filed 25 June 1999)

**1. Insurance— automobile rates—income on invested capital**

The Commissioner of Insurance cannot order automobile rates based on underwriting profit provisions that require the consideration of investment income on capital and surplus. A fair and reasonable profit must be calculated without considering investment income from capital and surplus while considering the returns of businesses of comparable risk; if the Legislature believes income on invested capital should be considered in insurance ratemaking cases, it should so provide.

**2. Insurance— automobile rates—dividends and deviations— due consideration**

The Insurance Commissioner, in the exercise of sound discretion and expertise, properly gave due consideration to dividends and deviations in an automobile ratemaking case. The test for reviewing orders of the Insurance Commissioner is whether the Commissioner's conclusions of law are supported by material and substantial evidence in light of the whole record; here, the

Commissioner attempted to provide a uniform premium rate by looking at historical figures provided by both parties, concluded that the traditional five percent of premium or margin would provide a reasonable and adequate amount of profit for insurance companies, further concluded that any extra amount of payment of dividends and deviations is unreasonable and would produce rates that are excessive and unfairly discriminatory, and concluded that the five percent of premium or margin would encourage inefficient, high cost companies to improve and would reward efficient, low cost companies. The established rate level is not inadequate, excessive, or unfairly discriminatory and the proposed rate will provide a fair and reasonable profit and no more.

Justice MARTIN did not participate in the consideration or decision of this case.

Chief Justice MITCHELL dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 129 N.C. App. 662, 501 S.E.2d 681 (1998), affirming in part and reversing and remanding in part orders entered 4 October 1996 and 31 October 1996 by the Commissioner of Insurance. On 5 November 1998, the Supreme Court granted discretionary review of an additional issue. Heard in the Supreme Court 9 March 1999.

*North Carolina Department of Insurance, by Kristin K. Eldridge and Sherri L. Hubbard, for appellant/appellee State ex rel. Commissioner of Insurance.*

*Young Moore and Henderson P.A., by R. Michael Strickland; Marvin M. Spivey, Jr.; William M. Trott; and Terryn D. Owens, for appellant/appellee North Carolina Rate Bureau.*

WAINWRIGHT, Justice.

The North Carolina Rate Bureau (Rate Bureau) was established by statute to represent all insurance companies that sell personal automobile insurance in this State. *See* N.C.G.S. § 58-36-1(1) (Supp. 1998). The Rate Bureau's duties include the publication of rates for motor vehicle liability insurance. *Id.*

The Commissioner of Insurance (Commissioner) is elected by the people for a four-year term and is the chief officer of the Insurance

IN THE SUPREME COURT                541

STATE ex rel. COMM'R OF INS. v. N.C. RATE BUREAU

[350 N.C. 539 (1999)]

Department. N.C.G.S. § 58-2-5 (1994). The Commissioner is charged with executing laws relating to insurance. N.C.G.S. § 58-2-1 (1994). The Commissioner's duties include: faithfully executing all laws governing insurance companies and the authority to adopt rules to enforce that law; preventing practices injurious to the public; furnishing the necessary forms for statements required by companies, associations, orders, or bureaus; reporting to the Attorney General any violations of law relating to insurance companies; instituting civil actions or criminal prosecutions for violations of the insurance statutes; giving a statement or synopsis of any insurance contract upon proper application by any citizen; administering all oaths required in the discharge of his official duty; compiling and making available to the public the lists of rates charged, including explanations of coverages provided by insurers; and adopting rules governing what constitutes an uninsurable facility. N.C.G.S. § 58-2-40 (Supp. 1998).

The Commissioner allows insurance companies to write insurance in North Carolina only after subscribing to and becoming members of the Rate Bureau. N.C.G.S. § 58-36-5(a) (1994). On behalf of these insurance companies, the Rate Bureau files with the Insurance Department rate proposals including classifications, schedules, and rules. N.C.G.S. § 58-36-65(a) (1994). Insurance rate proposals must be approved by the Commissioner as desirable and equitable for drivers of nonfleet private passenger motor vehicles. *Id.* If the Commissioner disapproves the Rate Bureau's proposals, the Commissioner may require the Rate Bureau to file modifications of the classifications, schedules, and rules. *Id.*

Various standards exist for the making and use of insurance rates. In general, rates must not be excessive, inadequate, or unfairly discriminatory. *See* N.C.G.S. § 58-36-10(1) (1994). Three basic principles of law pertain to the setting of insurance rates: (1) the Commissioner must set rates that will produce a fair and reasonable profit and no more, *In re N.C. Fire Ins. Rating Bureau*, 275 N.C. 15, 33, 165 S.E.2d 207, 220 (1969); (2) what constitutes a fair and reasonable profit "involves consideration of profits accepted by the investment market as reasonable in business ventures of comparable risk," *id.* at 39, 165 S.E.2d at 224; and (3) the underwriting business, which includes the collection and investment of premiums, is the only basis for calculating the profit provisions, *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 300 N.C. 381, 440, 269 S.E.2d 547, 584 (1980).

The Commissioner's duty when setting automobile rates is to determine whether the proposed rates will produce a fair and reasonable profit, but no more. The insurance industry obtains profits from two sources of income: (1) returns generated by the collection and investment of premiums (profits from underwriting business), and (2) returns generated by investing capital and surplus funds (profits from investment business). *See id.* at 446, 269 S.E.2d at 587. In North Carolina, there is no prescribed methodology for calculating the return on profits (profit methodology), and this Court has specifically recognized that creativity is acceptable within the parameters of the applicable statutes. *Id.* at 449, 269 S.E.2d at 589.

In the instant case, on 1 April 1996 the Rate Bureau requested rate increases of 5.7% for private passenger automobile insurance and 10.1% for motorcycle insurance. Subsequent to hearings, by orders dated 4 October 1996 and 31 October 1996, the Commissioner disapproved the proposed rate changes and ordered a rate reduction for private passenger automobiles of 8.3% and a rate increase for motorcycles of 3.2%.

On 16 June 1998, the Rate Bureau appealed the denial of its request for a rate increase to the Court of Appeals. That court unanimously affirmed the Commissioner on all issues except the profit methodology. *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 129 N.C. App. 662, 673, 501 S.E.2d 681, 689 (1998). On 21 July 1998, the Court of Appeals denied the Rate Bureau's petition for rehearing. The instant case is before this Court by virtue of the dissent below as to profit methodology. In addition, this Court allowed the Rate Bureau's petition for discretionary review as to the additional issue of whether the Commissioner properly gave "due consideration" to dividends (savings returned to policyholders) and deviations (discounts on policy rates) in his calculation when setting the automobile rates.

[1] The first issue on appeal is whether the Court of Appeals erred in concluding the Commissioner cannot order rates based on profits from the underwriting business along with profits from the investment income on capital and surplus. The Court of Appeals held that the Commissioner should have only used the profit provisions from the underwriting business to calculate the return on profits. *Id.* at 666, 501 S.E.2d at 685. The Court of Appeals concluded that the profit methodology used was identical to the method that was previously rejected by that court in *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 124 N.C. App. 674, 685, 478 S.E.2d 794, 802 (1996), *disc. rev.*

*denied,* 346 N.C. 184, 486 S.E.2d 217 (1997). *Rate Bureau,* 129 N.C. App. at 666, 501 S.E.2d at 685.

The Commissioner contends his ratemaking calculations were based on the profit provisions from the underwriting business calculated without considering investment income from capital and surplus. The Commissioner asserts that once the profit from the underwriting business was calculated, he compared that calculation by using the following profit equation:

underwriting business profits

+

investment income from capital and surplus =
total profits of the insurance industry

The Commissioner contends the two calculations in the instant case differ from the calculation previously rejected by the Court of Appeals in *Rate Bureau,* 124 N.C. App. at 685-86, 478 S.E.2d at 802. The Commissioner explains that in the prior case, he calculated the target total return of the insurance industry based on the total returns of industries of comparable risk. He then subtracted the investment income on capital and surplus from this total return and arrived at a total return on insurance operations. This return on operations was used to derive the profit provisions.

In the instant case, the Commissioner began with a direct estimate and justification of the return on operations, rather than a total return, and derived his profit provisions from this estimated return on operations without explicitly including in his calculations investment income from capital or surplus. The Commissioner reasons that this method keeps the two calculations distinct, whereas the rejected method in the prior case combined the investment income from capital and surplus into the actual ratemaking calculation.

N.C.G.S. § 58-36-10(2) lists the factors considered in ratemaking and provides, in pertinent part, the following:

Due consideration shall be given to actual loss and expense experience within this State . . . ; to prospective loss and expense experience within this State; to the hazards of conflagration and catastrophe; to a reasonable margin for underwriting profit and to contingencies; to margin for underwriting profit and to contingencies; to dividends, savings, or unabsorbed premium deposits allowed or returned by insurers to their policyholders, members, or subscribers; to investment income earned or realized by insur-

ers from their unearned premium, loss, and loss expense reserve funds generated from business within this State; to past and prospective expenses specially applicable to this State; and to all other relevant factors within this State: Provided, however, that countrywide expense and loss experience and other countrywide data may be considered only where credible North Carolina experience or data is not available.

We note the statute makes no provision for consideration of investment income from capital and surplus. This Court has previously stated:

In the absence of a legislative formula or standards, the Commissioner has had no alternative but to look to the rate-making procedures recognized in the industry and in other States. . . . Thus, the Rate Office and the Commissioner adopted the industry view that *the reasonableness of a profit to be allowed to a company writing automobile liability insurance was determinable on the basis of a percentage of the gross premium rather than on the basis of a rate of return on invested capital.*

*In re N.C. Auto. Rate Admin. Office*, 278 N.C. 302, 314-15, 180 S.E.2d 155, 164 (1971) (emphasis added).

In 1981, this Court formulated the fundamental rule as follows:

"In determining whether an insurer has made a reasonable profit, the amount of business done rather than its capital should be considered, and profits should be determined by subtracting losses and expenses from the total of premiums actually received, *to the exclusion of profit on capital and surplus*, and excess commissions paid to agents *but considering interest on unearned premiums and related elements.*"

*Rate Bureau*, 300 N.C. at 444, 269 S.E.2d at 586 (quoting 2 Ronald A. Anderson, *Couch Cyclopedia of Insurance Law* § 21:38, at 494 (2d ed. 1959)). The reason for the fundamental rule is that "the required capital assets of a casualty insurance company are primarily reserves to guarantee its ability to discharge its liability rather than for use as working capital in the prosecution of its business." *Auto. Rate Admin. Office*, 278 N.C. at 314, 180 S.E.2d at 164. Accordingly, a fair and reasonable profit must be calculated without considering investment income from capital and surplus while considering the returns of businesses of comparable risk.

STATE ex rel. COMM'R OF INS. v. N.C. RATE BUREAU

[350 N.C. 539 (1999)]

In other cases where the Commissioner has considered investment income on capital and surplus as part of the target returns, the Court of Appeals has followed the fundamental rule by consistently remanding the Commissioner's order with instructions that the underwriting profit provisions be recalculated to produce the original target returns without the consideration of investment income on capital and surplus. *See Rate Bureau,* 124 N.C. App. at 685-86, 478 S.E.2d at 802; *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 97 N.C. App. 644, 647, 389 S.E.2d 574, 576, *disc. rev. denied,* 326 N.C. 804, 393 S.E.2d 905 (1990); *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 95 N.C. App. 157, 161-62, 381 S.E.2d 801, 804 (1989); *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau,* 75 N.C. App. 201, 228, 331 S.E.2d 124, 143, *disc. rev. denied,* 314 N.C. 547, 335 S.E.2d 319 (1985).

This Court has stated that if the legislature believes income on invested capital should be considered in insurance ratemaking cases, it should so provide. *State ex rel. Hunt v. N.C. Reinsurance Facility,* 302 N.C. 274, 298, 275 S.E.2d 399, 411 (1981). In the instant case, the Commissioner's argument that rates are unfair if they do not consider investment income on capital and surplus is an argument that should be made to the legislature, not the courts. *See id.* This Court has made it clear that unless the legislature changes the law, investment income from capital and surplus cannot be considered when setting insurance rates. Thus, the Court of Appeals was correct in concluding the Commissioner cannot order rates based on underwriting profit provisions that require the consideration of investment income on capital and surplus.

**[2]** The additional issue on appeal is whether the Court of Appeals erred in holding that the Commissioner gave proper "due consideration" to dividends and deviations in his calculation when setting the automobile rates. Dividends and deviations are factors to be considered by the Commissioner in determining rates. N.C.G.S. § 58-36-10(2) provides that "due consideration" shall be given to the factors of dividends and deviations when ruling on a rate request. Dividends are savings given back to the policyholders by their insurance companies based on the return of excess premium deposits after the policy period. *See* N.C.G.S. § 58-36-60 (1994). Deviations are up-front discounts from the manual rates. Manual rates are the rates determined and published by the Commissioner in order to produce a fair and reasonable profit, and no more, for the average insurance company. Every insurance company is required to charge the manual rates unless the company has filed with and received approval from the

Commissioner to charge a lower rate, i.e., a "rate deviation." N.C.G.S. § 58-36-30 (Supp. 1998). The purpose of rate deviations is to attract more policyholders. Dividends and deviations are viewed as savings passed on to those policyholders whose insurance companies are more efficient and have lower costs than other insurance companies.

In the instant case, the Commissioner found that because an average insurance rate is used, some insurance companies will do better than average and others will not. Consequently, those who do better will be able to grant dividends and deviations of up to the traditional 5% of premium or margin. The Commissioner found that the average insurance rate already included the traditional built-in provision for dividends and deviations of approximately 5% of the premium or margin. The Commissioner contends that the Rate Bureau's attempts to apply an additional rate increase for the explicit purpose of paying dividends and deviations would lead to an increase in rates by essentially counting these factors twice (first, in the automatic premium or margin for dividends and deviations in the average manual rate, and second, in the additional rate increase proposed by the Rate Bureau for the explicit purpose of paying dividends and deviations). In contrast, the Rate Bureau contends the Court of Appeals' decision fails to recognize that the rates set by the Commissioner will not provide sufficient premiums to pay all the losses and expenses and will not leave a fair and reasonable profit for the average insurance company.

In his order, the Commissioner stated:

The argument between the parties, pared down to its simplest form, is whether the prospective rate level should be determined by the actual revenue retained by insurers at the end of the period or whether the prospective rate level should be set without regard to the discretionary collection and retention of premiums by insurers. In other words, the question is whether insurers' profit is the amount they have left after they have granted deviations and paid out policyholder dividends or whether insurers' profit is measured to include deviations and policyholder dividends.

As previously noted, N.C.G.S. § 58-36-10(2) requires that "due consideration" be given to the factors of dividends and deviations when ruling on a rate request. The Rate Bureau contends "due consideration" means that dividends and deviations must explicitly be reflected in the Commissioner's calculations and requires the

STATE ex rel. COMM'R OF INS. v. N.C. RATE BUREAU

[350 N.C. 539 (1999)]

Commissioner to include for each statutory rating factor the value, positive or negative, that is reasonably expected or required. *See Rate Bureau*, 75 N.C. App. at 224-25, 331 S.E.2d at 141. "Nothing in the language of the statute requires that the Commissioner provide for [dividends and deviations] so long as the rate level established on the statutory rate criteria is not inadequate, excessive, or unfairly discriminatory." *Id.* Thus, "due consideration" does not require that a numerical adjustment of the rates be made in order to reflect the effects of dividends and deviations. *Rate Bureau*, 124 N.C. App. at 681-82, 478 S.E.2d at 799. This Court has stated that the General Assembly did not intend

> to make any one, or all, of [the statutory rating standards] conclusive. . . . The weight to be given the respective factors is for the Commissioner to determine in the exercise of his sound discretion and expertise, but he may not arrive at his determination as to the propriety of the filing by shutting his eyes to experience shown by evidence of reasonably probative value simply because it is not presented to him in the customary statistical form.

*State ex. rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 471, 488-89, 234 S.E.2d 720, 729-30 (1977).

Although the Commissioner must give "due consideration" to the various factors, the ultimate question he must determine is

> whether the proposed rates will, after provision for reasonably anticipated losses and operating expenses, leave for the insurers (considered as if the Bureau were a single company with the composite experience of all companies issuing [automobile] insurance in North Carolina) a fair and reasonable profit and no more. The purpose of the entire statutory plan is to provide for the public, at reasonable cost, insurance in financially responsible companies. The public interest extends as truly to the financial responsibility of the insurer as it does to the reasonable cost of the insurance to the insured, and vice versa.

*Id.* at 489, 234 S.E.2d at 730 (citation omitted).

The test for reviewing orders of the Insurance Commissioner is whether the Commissioner's conclusions of law are supported by · material and substantial evidence in light of the whole record. *Rate Bureau*, 124 N.C. App. at 678, 478 S.E.2d at 797. Any order of the Commissioner concerning premium rates, supported by substantial evidence, is presumed to be correct and proper. N.C.G.S. § 58-2-80

(1994). However, " 'it is not our function to substitute our judgment for that of the Commissioner when the evidence is conflicting.' " *Rate Bureau*, 124 N.C. App. at 678, 478 S.E.2d at 797 (quoting *State ex rel. Comm'r of Ins. v. N.C. Rate Bureau*, 96 N.C. App. 220, 221, 385 S.E.2d 510, 511 (1989)).

In the instant case, the Commissioner attempted to provide a uniform premium rate by looking at the historical figures provided by both parties, including future projections, and found that the average manual rate already included the traditional 5% of premium or margin for dividends and deviations. The Commissioner found the 5% of premium or margin for dividends and deviations was equivalent to approximately $100,000,000, which could be paid by the insurance companies in the form of a dividend and/or deviation. The Commissioner concluded the 5% of premium or margin would provide a reasonable and adequate amount of profit for insurance companies. The Commissioner further concluded that any extra amount for payment of dividends and deviations in excess of the traditional 5% of premium or margin is unreasonable and would produce rates that are excessive and unfairly discriminatory. Finally, the Commissioner concluded that the 5% of premium or margin would encourage inefficient, high-cost companies to improve and would reward efficient, low-cost companies to attract new policyholders.

After careful review of the record, we hold that the Commissioner, in the exercise of his sound discretion and expertise, properly gave "due consideration" to dividends and deviations because the established rate level is not inadequate, excessive, or unfairly discriminatory. The proposed rate will provide a fair and reasonable profit and no more.

For the foregoing reasons, the decision of the Court of Appeals is

AFFIRMED.

Justice MARTIN did not participate in the consideration or decision of this case.

Chief Justice MITCHELL dissenting.

As the majority acknowledges, N.C.G.S. § 58-36-10(2) requires that *due* consideration be given to, among other factors, dividends and deviations when ruling on a rate request. The majority is also correct in noting that no one, or all, of the factors required to be consid-

ROMAN v. SOUTHLAND TRANSP. CO.

[350 N.C. 549 (1999)]

ered should be treated as conclusive. *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 471, 488-89, 234 S.E.2d 720, 729-30 (1977). The weight to be given any factor is for the Commissioner to determine in his discretion. *Id.* However, I believe that the Commissioner is required to give each factor some weight and that this must be reflected in his order. Otherwise, a reviewing court is faced with an inadequate appellate record and must, as here, simply accept the Commissioner's conclusory statements that he has taken all of the statutory factors into account. It is not enough for the Commissioner to note in conclusory fashion that dividends and deviations crossed his mind when he was entering his order. I believe that the order of the Commissioner in the present case does not adequately reflect the consideration the Commissioner gave the factor of dividends and deviations or indicate the weight, if any, he gave to that factor. For that reason, I respectfully dissent.